UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

WILLIAM LORUSSO, MARGARET GURLIDES, LINDA MORIARTY, RICHARD SEABERG, GARY LEONARD, CAROL VORPERIAN, NICHOLAS CAMPAGNOLA, JEROLD SCHERER, DENISE BEVILACQUA, AND KAREN CERVANTES, on behalf of themselves and all others similarly situated,

Plaintiffs,

-against-

NORTHWELL HEALTH PENSION PLAN, NORTH SHORE UNIVERSITY HOSPITAL, NORTHWELL HEALTH, INC., AND PENSION COMMITTEE,

Defendants.

Case No.:  2:24-cv-02785

---

**DEFENDANTS' RESPONSE TO PLAINTIFFS' WRITTEN OBJECTIONS TO THE FEBRUARY 18, 2026 MAGISTRATE'S REPORT AND RECOMMENDATIONS**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................. 4

    A.    The Plan And Related Disclosures .......................................................... 4

    B.    The FAC Relies On the 1999 SPD—Which Was Disclosed to Participants in 1999—to Illustrate "Wear-Away." ................................................ 6

    C.    Benefit Statements ................................................................................... 8

III.  ARGUMENT ...................................................................................................... 8

    A.    There Was No Error In the Magistrate's Conclusion That Plaintiffs Failed to State A Claim Upon Which Relief Can Be Granted ....................................... 8

        1.    The Magistrate Correctly Recommended Dismissal of Plaintiffs' Section 102 SPD Claims for Failure to State a Claim ............................... 8

        2.    Plaintiffs' Breach of Fiduciary Duty Claim Should Also be Dismissed for Failure to State a Claim .................................................... 12

        3.    The Magistrate Correctly Recommended Dismissal of the ERISA Section 204(h) Claim for Failure to State a Claim .................................. 15

        4.    The Magistrate Correctly Recommended Dismissal of Plaintiffs' Section 105 Claim for Failure to State a Claim ...................................... 17

    B.    The Magistrate Correctly Found That Plaintiffs' Claims Are Time-Barred ........ 18

        1.    Plaintiffs' Breach of Fiduciary Duty Claims (Count VII) Are Time-Barred ............................................................................................. 18

        2.    Plaintiffs' SPD Claims (Count III, V, VI) Are Time Barred ................... 21

        3.    Plaintiffs' ERISA Section 204(h) Claims (Counts I and II) Are Time-Barred ............................................................................................. 22

        4.    Plaintiffs' Benefit Statement Claims (Count IV) Are Time-Barred ........ 23

    C.    No Leave to Replead Should Be Granted ............................................... 25

IV.   CONCLUSION ................................................................................................. 26

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amara v. Cigna Corp.*,
534 F. Supp. 2d 288 (D. Conn. 2008) ............................................................................ passim

*Amara v. Cigna Corp.*,
775 F.3d 510 (2d Cir. 2014) ................................................................................................14

*Belyea v. City of Glen Cove*,
No. 20-cv-5675, 2022 WL 3586559 (E.D.N.Y. Aug. 22, 2022) ............................................19

*Browne v. CTC Corp.*,
15 F.4th 175 (2d Cir. 2021) .................................................................................................18

*Caputo v. Pfizer, Inc.*,
267 F.3d 181 (2d Cir. 2001) ...........................................................................................19, 23

*Carfora v. Tchrs. Ins. Annuity Ass'n of Am.*,
631 F. Supp. 3d 125 (S.D.N.Y. 2022) ..............................................................................19, 21

*Corner Post, Inc. v. Bd. of Governors of Fed. Reserve Sys.*,
603 U.S. 799 (2024) ..............................................................................................................21

*Food Holdings Ltd. v. Bank of Am. Corp.*,
423 F. App'x 73 (2d Cir. 2011) .............................................................................................26

*Frommert v. Conkright*,
433 F.3d 254 (2d Cir. 2006) ......................................................................................3, 15, 16

*Gabelli v. SEC*,
568 U.S. 442 (20.13) .............................................................................................................21

*Hirsh v. Suffolk County*,
No. 08-2660, 2015 WL 1275461 (E.D.N.Y. Mar. 8, 2015), *aff'd sub nom.*, *Hirsch v. Pernat*,
684 F. App'x 53 (2d Cir. 2017) .............................................................................................24

*Hirt v. Equitable Retirement Plan for Employees, Managers & Agents*,
441 F. Supp. 2d 516 (S.D.N.Y. 2006), *aff'd*, 533 F.3d 102 (2nd Cir. 2008) ...............16, 22, 24

*Hudson v. Nat'l Football League Mgmt. Council*,
No. 18-4483, 2019 WL 5722220 (S.D.N.Y. Sep. 15, 2019), *R. &. R. adopted*, 2019 WL
4784680 (S.D.N.Y. Sep. 30, 2019) .......................................................................................21

*Hurlic v. Southern California Gas Co.*,
539 F.3d 1024 (9th Cir. 2008) .............................................................................................16

## TABLE OF AUTHORITIES

**Page(s)**

*In re Eaton Vance Mutual Funds Fee Litig.*,
   403 F. Supp. 2d 310 (S.D.N.Y. 2005)..................................................................25

*Keen v. Lockheed Martin Corp.*,
   486 F. Supp. 2d 481 (E.D. Pa. 2007) ...................................................................22

*Kyszenia v. Ricoh USA, Inc.*,
   583 F. Supp. 3d 350 (E.D.N.Y. 2022) ..................................................................25

*Landmark Ventures, Inc. v. Wave Sys. Corp.*,
   513 F. App'x 109 (2d Cir. 2013) ..........................................................................25

*Leber v. CitiGroup 401(k) Plan Inv. Comm.*,
   129 F. Supp. 3d 4 (S.D.N.Y. 2015) ......................................................................24

*Loper Bright Enterprises v. Raimondo*,
   603 U.S. 369 (2024)..............................................................................................17

*Losquado v. FGH Realty Credit Corp.*,
   959 F. Supp. 152 (E.D.N.Y. 1997) .......................................................................20

*Osberg v. Foot Locker, Inc.*,
   138 F. Supp. 3d 517 (S.D.N.Y. 2015)............................................................ passim

*Perlman v. Gen. Elec.*,
   No. 24-514, 2024 WL 4635235 (2d Cir. Oct. 31, 2024).......................................20

*Pessin v. JPMorgan Chase U.S. Benefits Exec.*,
   112 F.4th 129 (2d Cir. 2024) ......................................................................... passim

*Pessin v. JPMorgan Chase U.S. Benefits Exec.*,
   No. 22-2436, 2022 WL 17551993 (S.D.N.Y. Dec. 9, 2022), *aff'd in pertinent part*, 112 F.4th
   129 (2d Cir. 2024)..............................................................................................9, 13

*Pirro v. Nat'l Grid*,
   590 F. App'x 19 (2d Cir. 2014) ......................................................................17, 22

*Register v. PNC Fin. Services Grp., Inc.*,
   477 F.3d 56 (3d Cir. 2007)...............................................................................3, 17

*Rotkiske v. Klemm*,
   589 U.S. 8 (2019)..................................................................................................21

*Smith v. Campbell*,
   782 F.3d 93 (2d Cir. 2015).....................................................................................21

## TABLE OF AUTHORITIES

**Page(s)**

*U.S. ex rel. Gallian v. AmerisourceBergen Corp.*,
No. 16-02458, 2022 WL 20611664 (E.D.N.Y. Dec. 22, 2022)..............................................25

**STATUTES**

Employee Retirement Income Security Act

29 U.S.C. § 1022, ERISA Section 102 ............................................................... passim

29 U.S.C. § 1025, ERISA Section 105 ............................................................... passim

29 U.S.C. § 1054(h), ERISA Section 204(h)..................................................... passim

29 U.S.C. § 1104, ERISA Section 404 .............................................................1, 12

29 U.S.C. § 1113............................................................................................... passim

29 U.S.C. § 1132(c) ..........................................................................................3, 23

Pub. L. 107-16, 115 Stat. 38 (June 7, 2001) ...................................................17

**OTHER AUTHORITIES**

26 C.F.R. § 1.411(d)-6T, A-10 (1998)..................................................................17

68 Fed. Reg. 17277-02, 17285 (April 9, 2003).....................................................17

Fed. R. Civ. P. 9(b) ...........................................................................................20

Fed. R. Civ. P. 12.............................................................................................2, 11

Fed. R. Civ. P. 12(b)(6).....................................................................................1, 2, 8

Fed. R. Civ. P. 15(c)(1).......................................................................................24

Local Civil Rule 7.1(c) .......................................................................................27

Local Civil Rule 15.1..........................................................................................25

Susan Harrigan, *No Fan of Pension Conversions*, Newsday, 2002 WLNR 498499 (Dec. 14, 2002) ......................................................................................................19

## I.    INTRODUCTION

Over twenty-five years ago, on January 1, 1999, Northshore University Hospital converted its traditional defined benefit plan to a cash balance plan and related 403(b) defined contribution plan (the "1999 Conversion").  Plaintiffs, in their First Amended Complaint ("FAC"), allege that the 1999 Summary Plan Description ("SPD") and other communications from 1998 and 1999 regarding the 1999 Conversion violated the Employee Retirement Income Security Act ("ERISA") by failing to adequately disclose the possibility of wear-away – the possibility that some participants may not earn additional benefits under the new cash balance formula until their account balance under the new formula exceeded the prior pension plan formula's benefit amount. They also allege that the Defendants failed to provide a sufficient ERISA Section 204(h) notice of the 1999 Conversion and failed to provide adequate benefit statements.  On February 18, 2026, Magistrate Anne Y. Shields issued a Report and Recommendation ("R&R") recommending that all of Plaintiffs' claims be dismissed with prejudice based on the insufficiency of Plaintiffs' pleading and the untimeliness of their claims.  Plaintiffs challenge the R&R on a number of grounds, none of which have merit.

First, as Magistrate Shields properly concluded, Plaintiffs fail to state plausible breach of fiduciary duty and SPD claims under ERISA Sections 102 and 404 as a matter of law based on binding Second Circuit precedent in *Pessin v. JPMorgan Chase U.S. Benefits Exec.*, 112 F.4th 129 (2d Cir. 2024).  R&R 12-13, 15-16 (recommending dismissal of Counts III, V-VI, VII).  The Second Circuit in *Pessin* affirmed the Rule 12(b)(6) dismissal of ERISA 102 and 404 claims on the basis that language in the SPD substantively similar to that at issue here was sufficient for an ordinary participant to understand how their benefit would be calculated, and sufficiently explained the potential consequences of the transition to the cash balance formula, even though the specific term "wear-away" was never used.  112 F.4th at 137, 140.

1

Here, as in *Pessin*, Plaintiffs received an SPD at the time detailing the conversion to a cash balance plan at length. FAC ¶¶ 323, 326; ECF No. 1 Ex. A.[1] This 1999 SPD disclosure sufficiently informed participants regarding the conversion by, for example, alerting participants that their pre-conversion accrued benefits would continue to act as a "minimum benefit" after the conversion and disclosing that there may be a "shortfall" in certain participants' pension benefits following the conversion. The SPD also states that, while "Transition Credits" would be conferred to provide additional benefits to certain eligible participants, there was "no guarantee" that participants' post-conversion benefits would meet or exceed benefits that would have been earned under the prior plan, had it continued. And the FAC's allegations themselves purport to calculate wear-away "by reference" to the information provided in contemporaneous disclosures describing a hypothetical plan participant named "Joan." *E.g.*, FAC ¶¶ 175; 289-309. Thus, Plaintiffs' claims fail for the same reasons as the claims in *Pessin*.

Plaintiffs' Objections barely mention *Pessin*, let alone explain why it does not mandate dismissal of their claims (it does). Instead, they focus on distinguishable authority, not even in the Rule 12 context, that Magistrate Shields correctly found to be inapplicable and that the Second Circuit in *Pessin* already found distinguishable. *Osberg v. Foot Locker, Inc.*, 138 F. Supp. 3d 517 (S.D.N.Y. 2015) and *Amara v. Cigna Corp.*, 534 F. Supp. 2d 288 (D. Conn. 2008). As Magistrate Shields explained, *Osberg* and *Amara* were not Rule 12(b)(6) decisions and involved allegations not present here that the defendants took steps to affirmatively mislead participants to believe they would receive *both* their new cash balance benefit and their pre-conversion benefit. R&R 13

---

[1] Plaintiffs attached the 1999 SPD to their original complaint, *see* ECF No. 1 Ex. A, and removed it as an attachment to their FAC. *See* ECF No. 30. But the FAC quotes, repeatedly references, and relies upon the SPD extensively, *e.g.*, FAC ¶¶ 85-91, 118-20, 166-70, 175-288, 323-31, and six of Plaintiffs' seven claims concern whether the SPD provided sufficient and timely disclosures. *See* FAC ¶¶ 347-97, 408-31. Plaintiffs do not object to the R&R's consideration of the SPD or any other documents referenced in the Magistrate's opinion. *See, e.g.*, R&R 2-3.

2

(citing *Pessin*, 112 F. 4th at 139-40 (explaining how allegations were different in *Osberg* and *Amara*)).

Second, as to Plaintiffs' ERISA Section 204(h) claims (Counts I-II), Plaintiffs do not dispute that Defendants provided 15 days' notice on December 16, 1998 that "accruals under the North Shore University Hospital Pension Plan will stop as of January 1, 1999." FAC ¶¶ 312-13. Rather, Plaintiffs object that the Magistrate should have found the notice inadequate based on *Frommert v. Conkright*, 433 F.3d 254 (2d Cir. 2006). Plaintiffs never cited *Frommert* previously, and for good reason. That case arose under completely different circumstances involving "phantom offset" accounts that reduced participant benefits and that were not disclosed until years after the fact. Instead, Magistrate Shields correctly looked to the Third Circuit's factually analogous decision in *Register v. PNC Fin. Services Grp., Inc.*, 477 F.3d 56, 72-73 (3d Cir. 2007), and properly concluded that Plaintiffs' arguments that the 204(h) notice here was deficient because it did not allow participants to determine their post-amendment benefits fail because the law at the time did not require such disclosures. R&R 9-10.

Third, as to Plaintiffs' benefit statement claim under ERISA Section 105(a)(1)(B) (Count IV), Magistrate Shields correctly concluded that Plaintiffs failed to allege facts that the statements provided to them were inadequate. R&R 17. Generic allegations and legal conclusions regarding putative class members not before this Court who may or may not have received adequate statements are not sufficient for these Plaintiffs to state a claim. FAC ¶¶ 399-407; R&R 17. Moreover, Section 105 claims are only cognizable as "penalty claims" under 29 U.S.C. § 1132(c), and Plaintiffs do not dispute that they have not asserted their claim as such a penalty claim. R&R 22-23.

Finally, Magistrate Shields properly concluded that Plaintiffs' claims, which arise from events occurring more than twenty-five years ago, are all time-barred.  R&R 18-24.  Plaintiffs admit participants received the SPD detailing the conversion at length in 1999, which is when the statutes of limitations and repose accrued under applicable federal law.  FAC ¶¶ 323, 326; ECF No. 1 Ex. A.  Plaintiffs purport to demonstrate wear-away for a hypothetical plan participant using the information and example disclosed in the 1999 SPD, and in fact, at least as early as 2002, public news sources confirm plan participants (i.e., putative class members) were aware of wear-away's potential effect on their accounts and even contemplated filing a lawsuit at that time.  *See infra* 19 n.11.

Plaintiffs' Objections that their claims are timely hinge on their argument that the fraud and concealment exception in 29 U.S.C. § 1113 applies.  As the R&R properly held, Plaintiffs' allegations of fraud or concealment were not plead with the requisite particularity and did not describe any events giving rise to a "strong inference" that the defendant had an intent to defraud, knowledge for the falsity of the statement, or reckless disregard for the truth.  *E.g.*, R&R 22.  For all of these reasons, the Magistrate's R&R should be adopted in its entirety.[2]

## II.    **BACKGROUND**

### A.    **The Plan And Related Disclosures.**

On January 1, 1999, North Shore University Hospital's ("NSUH") Pension Plan benefit formula was frozen and a new cash balance plan formula was adopted.  FAC ¶¶ 80, 117.  In a letter dated December 16, 1998—fifteen days prior to the January 1, 1999, conversion—pension plan participants were notified of the forthcoming conversion and that, due to the conversion, "accruals

---

[2] Although not expressly relied on by the R&R, the FAC also fails because it relies on conclusory and generic "group pleading" against "Defendants" without specifying alleged wrongdoing committed by each named Defendant.  ECF 38-1 (Defendants' Motion to Dismiss) at 3, 24-25; ECF 38-4 (Defendants' Reply) at 10.

under the North Shore University Hospital Pension Plan *will stop* as of January 1, 1999." FAC ¶¶ 312-13 (emphasis added). Then, in a letter dated January 6, 1999, participants were informed that "your accrual of benefits under the Plan's current formula *stops as of December 31, 1998*," and that eligible participants had been automatically enrolled in the cash balance plan. FAC ¶¶ 320-21 (emphasis added).

Participants received an SPD in 1999 (the "1999 SDP"), which included an Appendix describing the conversion's impact on participants' benefits. This disclosure, attached as Exhibit A to Plaintiffs' original Complaint, FAC ¶¶ 323, 326; Compl., Ex. A, explained that certain participants would receive "Transition Credits" if they met particular age and service requirements and were susceptible to a "shortfall":

> Transition Credits are designed to provide additional benefits to certain participants who might otherwise experience *a shortfall* in their normal retirement benefits as compared with those benefits they would have received under the former NSUH Pension Plan, had it continued. Transition Credits are calculated under a single set of assumptions regarding future interest and salary rate increases, *which might be different from actual experience.* Therefore, *these credits do not provide a guarantee that benefits under the current Retirement Program will meet or exceed those which the former NSUH Pension Plan would have provided.*

Compl. Ex. A § A.2.(A) (emphasis added). For participants not eligible for the Transition Credits, the disclosure likewise confirmed that there was no guarantee that benefits under the new program would meet or exceed the prior formula:

> [T]he fact that a participant is not eligible for Transition Credits, is also not a guarantee that the benefits provided under the current Retirement Program will meet or exceed those that the participant might have received under the former NSUH Pension Plan formula, had it continued.

*Id.*[3]  The disclosure explained the interest rate and salary increase assumptions used to calculate Transition Credits in detail.  *Id.* § A.2.(B).[4]  It also notified participants that while Transition Credit percentages would "range from 0% to 14% with an average of about 3%," participants receiving higher Transition Credit percentages are "likely to be closer to age 65 with a *shorter period of time to make up for any difference in retirement benefits.*"  *Id.* § A.2(B) (emphasis added).

The 1999 SPD also explicitly stated that pre-conversion benefits as of December 31, 1998 would continue to function as a "minimum benefit" for participants following conversion to the cash balance plan:

> *Minimum Benefit* for former NSUH Pension Plan Participants
>
> If you were a participant in the former NSUH Pension Plan, *your minimum benefit under any form of payment under the Cash Balance Plan will be the value of your December 31, 1998 accrued benefit under the former NSUH Pension Plan including the value of any early retirement subsidies for which you may be eligible at the time* you commence payment of your benefits.

*Id.* § E (emphasis added).  This means that participants would receive the greater of their cash balance formula benefit or the "minimum benefit."  *Id.*

**B.  The FAC Relies On the 1999 SPD—Which Was Disclosed to Participants in 1999—to Illustrate "Wear-Away."**

In order to illustrate the potential impact of the conversion on a participant enrolled in the pension plan in 1999, the 1999 SPD utilized a hypothetical individual, "Joan".  *Id.* § A.1., A.2.(C). Here, Plaintiffs specifically allege that wear-away "is precisely what occurred here to Named Plaintiffs and the members of the proposed Class *and can be demonstrated by reference to the*

---

[3] The disclosure explained that, "The purpose of Transition Credits is for [eligible] participants in the new Retirement Program, *which includes the Cash Balance Plan and the 403(b) Plan*, to receive benefits that approximate the normal retirement benefits they would have accrued under the NSUH Pension Plan if it had continued unchanged, assuming continuation of the participant's service until age 65."  Compl. Ex. A § A.2 (emphasis added).

[4] The SPD also explained the assumptions regarding the 403(b) Plan that were used to calculate the Transition Credits. Compl. Ex. A § A.2; § A.2(B) (describing assumption of "annual investment returns in the 403(b) Plan of 8%"; and assumption of "annual employee contributions to the 403(b) Plan" of specified amounts, depending on salary).

6

*hypothetical individual, Joan, referenced in the SPD, as well as Named Plaintiff Jerold Scherer.*" FAC ¶ 175 (emphasis added). Indeed, based on the *information contained in the 1999 SPD*, Plaintiffs allege that "in 1999, Joan would almost certainly have been subject to" wear-away. FAC ¶¶ 206, 208; *see also* FAC ¶¶ 289-309 (calculating alleged wear-away for Plaintiff Jerold Scherer using information from the 1999 SPD).

The FAC alleges there are three reasons why a participant's opening account balance would fall short of providing the full benefit to which a participant was already entitled as of December 31, 1998: (i) utilization of a 6% interest rate assumption to calculate Transition Credits when interest rates were likely to fall below 6%; (ii) discounting benefits from age 65 rather than an earlier age; and (iii) utilization of a particular conversion factor to represent the probability of survival. FAC ¶¶ 211-18. But each of these "purported reasons" was expressly disclosed to participants in the 1999 SPD. Compl. Ex. A § A.2.(A). ("Transition Credits are calculated under a single *set of assumptions regarding future interest* and salary rate increases, *which might be different from actual experience*.) (emphasis added); *Id.* § A.2.(B). (noting use of "interest rate of 6%"); *id.* § A.1. ("This conversion method assures that you receive a starting value in the Cash Balance Plan which is 'actuarially equivalent' to the value of the benefit you had accrued under the NSUH Pension Plan's benefit formula *assuming that you retire at age 65.*") (emphasis added); *id.* § A.1. (disclosing 3.6163 conversion factor).

Finally, Plaintiffs allege that, *based on information disclosed to participants in the 1999 SPD*, "the Opening Account Balance was very likely to be insufficient to provide the Protected Benefit,[5] and, *as Joan illustrates*, potentially falling well short of providing the Protected Benefit

---

[5] The FAC defines "Protected Benefit" as "the accrued benefit as of the effective date of the plan amendment…", FAC ¶123, i.e. participants' pre-conversion accrued benefits/continuing "minimum benefit".

7

to which Joan was entitled."  FAC ¶ 219 (emphasis added); ¶¶ 289-309 (calculation for Jerold Scherer).

### C.    Benefit Statements.

Plaintiffs generally allege that "Class Members" but not "Plaintiffs or "Named Plaintiffs," received quarterly benefit statements following the conversion.  FAC ¶¶ 401-06.  They claim that these statements were insufficient because the statements reflected only the value of their post-conversion account balance and did not include any minimum benefit information.  R&R 5-6.

## III.    ARGUMENT

### A.    There Was No Error In the Magistrate's Conclusion That Plaintiffs Failed to State A Claim Upon Which Relief Can Be Granted.

#### 1.    The Magistrate Correctly Recommended Dismissal of Plaintiffs' Section 102 SPD Claims for Failure to State a Claim.

Magistrate Shields properly recommended dismissal of Plaintiffs' Section 102 claims that Defendants purportedly failed to provide an SPD that sufficiently disclosed wear-away to participants and purportedly misled participants as to the ultimate benefit payable (Counts III, V-VI).  In doing so, the Magistrate applied binding and directly analogous Second Circuit precedent, *Pessin v. JPMorgan Chase U.S. Benefits Executive*, 112 F.4th 129 (2d Cir. 2024), and correctly found that the SPD here sufficiently explained the conversion to participants.  R&R 10-14. Notably, in their Objections, Plaintiffs barely mention *Pessin* and when they do, it is only to incorrectly narrow the holding of that case and to pretend it does not require dismissal of their claims.  Put simply, Plaintiffs are wrong.

In *Pessin*, the Second Circuit reviewed SPD language substantially similar to that at issue here, and held that it sufficiently described wear-away and "clearly and accurately explained how a plan participant's benefits would be calculated," warranting Rule 12(b)(6) dismissal of the ERISA Section 102 claims.  *Pessin*, 112 F.4th at 132.  Specifically, in *Pessin*, the SPD stated:

> Your opening balance under the Cash Balance Plan was determined by converting your accrued benefit under the prior benefit formula to its lump sum value using actuarial assumptions.  This conversion method assures that you receive a starting value in the new plan which is "actuarially equivalent" to the value of the benefit you had accrued under the prior benefit formula. …
>
> After December 31, 2003, your accrued benefit under the prior formula will be frozen and will continue to act as a minimum benefit.[6]

Here, the 1999 SPD similarly states:

> Your "Opening Account Balance" in the Cash Balance Plan is determined by converting your December 31, 1998 accrued benefit under the NSUH Pension Plan benefit formula to its present value on January 1, 1999.  This conversion method assures that you receive a starting value in the Cash Balance Plan which is "actuarially equivalent" to the value of the benefit you had accrued under the NSUH Pension Plan's benefit formula assuming that you retire at age 65 …
>
> ***
>
> If you were a participant in the former NSUH Pension Plan, your minimum benefit under any form of payment under the Cash Balance Plan will be the value of your December 31, 1998 accrued benefit under the former NSUH Pension Plan including the value of any early retirement subsidies for which you may be eligible at the time you commence payment of your benefits.

Compl. Ex. A.  The 1999 SPD also explained the interest rate and salary assumptions used to calculate Transition Credits and the assumptions regarding the 403(b) Plan used to calculate the Transition Credits, as well as the range and rationale for the Transition Credit percentages given to participants.  R&R 11.  In addition, the 1999 SPD stated that pre-conversion accrued benefits would continue to function as a "minimum benefit" for participants following conversion to the cash balance plan.  *Id.* at 12.

Like *Pessin*, the 1999 SPD here explained that the opening balance was "actuarially equivalent" to the prior accrued benefit at age 65 and went further by stating that (a) there could be a "shortfall" in certain participants benefits following the conversion, (b) transition credits could not "provide a guarantee" that benefits under the new cash balance plan would "meet or exceed"

---

[6] *Pessin v. JPMorgan Chase U.S. Benefits Exec.*, No. 22-2436, 2022 WL 17551993, at *2 (S.D.N.Y. Dec. 9, 2022), *aff'd in pertinent part*, 112 F.4th at 140.

benefits under the old plan and (c) that some participants were not eligible for transition credits and there "is also not a guarantee" that those participants will receive benefits under the cash balance plan that meet or exceed benefits under the old pension plan formula. And, like in *Pessin*, the 1999 SPD goes on to describe that benefits earned in the old plan through December 31, 1998 (December 31, 2003 in *Pessin*) will act as a "minimum benefit."

In fact, the disclosures in this case go further. The 1999 SPD here also illustrated the impact of the 1999 Conversion on a hypothetical individual, "Joan." Plaintiffs use that example to demonstrate that participants were "almost certainly" going to experience wear-away. FAC ¶ 206. Plaintiffs specifically allege that wear-away "is precisely what occurred here to Named Plaintiffs and the members of the proposed Class *and can be demonstrated by reference to the hypothetical individual Joan, referenced in the SPD*." FAC ¶ 175 (emphasis added). Expressly referencing the 1999 disclosure, Plaintiffs also allege that "[t]he reduction in the rate of future benefit accrual was illustrated above for Joan both assuming that current factors remained constant and assuming potential changes in factors, such as future salary increases." FAC ¶ 355. Plaintiffs allege further, again *based on information in the 1999 SPD disclosed to participants*, that "the Opening Account Balance was very likely to be insufficient to provide the Protected Benefit, and, *as Joan illustrates*, potentially falling well short of providing the Protected Benefit to which Joan was entitled." FAC ¶ 219 (emphasis added). In other words, the 1999 SPD example for a hypothetical "Joan" that was communicated to participants accurately described what Plaintiffs allege happened to them, wholly undermining any claims by Plaintiffs that they did not have proper notice (or that there was any fraud or concealment, *infra* 19-21).

Accordingly, like the disclosure in *Pessin*, the 1999 SPD met the requirements of 29 U.S.C. § 1022. *Pessin*, 112 F.4th at 137 (SPD satisfied Section 102 where it "explain[s] the plan's

10

transition to a cash balance formula and its potential consequences on plan participants," even if "the term 'wear away' [is] not explicitly used"); R&R 12.

Plaintiffs' attempt to distinguish *Pessin* is nonsensical. They point to the fact that in *Pessin* the traditional defined benefit plan was not frozen until five years after the transition to the cash balance plan (on December 31, 2023), 112 F.4th at 140, and that was not the case here. However, the timing of *when* the plan was frozen in *Pessin* was not the basis for the Second Circuit's holding. Rather, the *Pessin* court looked at the disclosures, and concluded they sufficiently explained the consequences of the freezing of the old plan, including disclosures indicating that if the frozen "minimum benefit" exceeded the cash balance benefit, participants would receive that frozen minimum benefit. *Id.* at 137-38, 140.[7]

Moreover, the Magistrate properly held that Plaintiffs' proffered authority in support of their Section 102 claims, the *Osberg* and *Amara* decisions, are inapposite. First, unlike *Pessin*, neither *Amara* nor *Osberg* were at the Rule 12 stage so they did not address the applicable pleading standard. Second, even on the merits, *Osberg* and *Amara* are factually distinguishable. *See Pessin*, 112 F.4th at 139-40 (explaining differences between *Pessin* and *Osberg* and *Amara*); R&R 13-14 ("*Pessin* makes clear that *Amara* and *Osberg* hold that SPDs violate ERISA where they affirmatively mislead participants to believe they are better off under the cash balance plan and will receive both their cash balance accounts and their final average pay benefits … [but] [h]ere, the Amended Complaint is devoid of any such allegations.").

---

[7] Plaintiffs' argument that the "no guarantee" language was technical jargon that would not be understood by the average plan participant flies in the face of common sense. Objections 9-10. Plaintiffs offer no authority to support their opinion. "No guarantee" is clear on its face, made even more clear with the minimum benefit disclosure. By saying that there was "no guarantee" that the value of the current cash balance plan benefit would meet or exceed the benefits under the old plan, and that the minimum benefit would be the value of the frozen benefit (as of December 31, 1998) including any early retirement subsidies under the old plan, a reasonable participant would understand that the frozen minimum benefit might be worth more than the cash balance amount, and the participant would receive the greater of the two—but not both.

Similarly, the R&R and Second Circuit in *Pessin* distinguished *Amara* because the defendant in that case was found to have intentionally "prevented [participants] from learning the amount of their traditional defined benefit" and intentionally withheld details that would permit employees to compare their benefits under the plans. *Pessin*, 112 F.4th 139-40; R&R 13-14. No such allegations exist here, and the description in the 1999 SPD, particularly the "Joan" example, demonstrate otherwise. R&R 13-14.

Although Plaintiffs protest that the FAC does include allegations that the disclosures here misled participants, (Objections 11-12), the allegations highlighted by Plaintiffs underscore both their dissimilarity from *Osberg* and *Amara* and their insufficiency. Plaintiffs do not allege facts that any disclosures here misled participants to believe they would receive benefits under both formulas or that one plan was better than the other. *Id*. The facts here are distinguishable from *Osberg* and *Amara*, and Plaintiffs have no answer to the Second Circuit's binding conclusion in *Pessin* that materially similar disclosures to the ones here were sufficient. *Pessin*, 112 F.4th at 132, 137.

### 2. Plaintiffs' Breach of Fiduciary Duty Claim Should Also be Dismissed for Failure to State a Claim.

In Count VII, Plaintiffs contend that Defendants breached their fiduciary duty under 29 U.S.C. § 1104(a)(1) as a result of the 1999 SPD. But Plaintiffs' challenges to the Magistrate's recommended dismissal of the breach of fiduciary duty claim mirror their arguments on the Section 102 claims and fail for the same and additional reasons.

The Magistrate correctly concluded that here, as in *Pessin*, there was no fiduciary breach because Defendants sufficiently explained the potential for "wear-away." R&R 15-16 ("Plaintiffs' claim hinges on whether the SPDs sufficiently disclosed the potential for wear-away and the ultimate benefit payable to plan participants. In this instant case, they did."). As discussed *supra*,

both here and in *Pessin*, the 1999 SPD indicated that the value of pre-conversion benefits might be greater than the value of their post conversion benefits and to account for this issue, participant's accrued pre-conversion benefits would function as a continuing minimum benefit after the conversion. *See* R&R 15 ("describing the prior calculation as a 'minimum benefit' was not inaccurate, nor was it deceptive or misleading. Using the term 'minimum benefit' implies that the calculation under the cash balance formula could be lower than the calculation under the final average pay formula.") (citing *Pessin*, 112 F.4th at 137).

In addition, here, as in *Pessin*, the 1999 SPD identified future interest rates and assumed retirement age as two potential explanations for why a plan participant's benefit under the traditional defined benefit plan might be greater than their cash balance benefit. *See* Compl Ex. A § E; § A.2.(A).  The Second Circuit held that such disclosures were "sufficient to put someone in Pessin's position on notice that they might receive the minimum benefit rather than the cash balance benefit." *Pessin*, 112 F.4th at 138; R&R 15-16.

In response, Plaintiffs first say that other disclosures form the basis of a plausible fiduciary breach claim.  Objections 15.  But Plaintiffs do not even try to explain how or why the other disclosures are different than those found sufficient in *Pessin* or otherwise state a claim.  For example, Plaintiffs point to a December 16, 1998 letter stating that the retirement plan is "assisting you toward financial security in your retirement years," and a retirement plan brochure that stated the plan will help you "build a solid foundation for your retirement income" and a "benefit that grows over your career." *Id.*  But in the context of the other disclosures in the 1999 SPD explaining how the transition to the cash balance plan worked, these statements were not misrepresentations, and do not suggest that participants were entitled to both their old plan benefit and their new cash balance plan benefit. *See Pessin*, 2022 WL 17551993, at *2, *5 (dismissing breach of fiduciary

13

duty claims despite fact that participants were told, *inter alia*, that the plan "provided participants with a 'baseline of steadily growing assets'" because SPD and other disclosures otherwise sufficiently alerted plaintiff to how the transition to a cash balance formula worked), *aff'd in pertinent part*, 112 F.4th at 137-39.  Indeed, the 1999 SPD here, like the SPD in *Pessin*, also told participants that their prior formula benefit would act as a "minimum." *See* Compl. Ex. A § E (regarding December 31, 1998 prior formula benefit); *Pessin*, 112 F.4th at 135 (SPD "specified that the 'minimum benefit [is] equal to your accrued benefit under the final average pay formula as of the earlier of your termination of employment or December 31, 2003.'") (citations omitted).

Plaintiffs next repeat the same inapt arguments regarding *Osberg* and *Amara*.  Objections 15.  Neither case saves the FAC.  In both *Osberg* and *Amara* the defendants took steps to hide information from participants, such as prohibiting HR from ever providing comparison between the old and new plan benefits, and explicitly limiting information provided to participants to only "good news." *Amara*, 534 F. Supp. 2d at 343 ("We continue to focus on NOT providing employees before and after samples of the Pension Plan changes"); *Amara v. Cigna Corp.*, 775 F.3d 510, 530-31 (2d Cir. 2014) (directing benefit department "not to provide benefits comparisons under the old and new plans … even though employees explicitly requested such a comparison")  (citation omitted); *Osberg*, 138 F. Supp. 3d at 530, 533 (HR made "an affirmative decision" to "leave out the negative aspects of the Plan changes" and "to limit the Company's communications with participants to 'good news'").  There are no similar allegations here. *See Pessin*, 112 F.4th at 139-40.

Moreover, Plaintiffs' contention that here "participants had no information or formulas to make comparisons" between the plans (Objections 16) is undermined by their own allegations

which use the information in the 1999 SPD – and only that information – to calculate purported wear-away for a hypothetical participant.  *Supra* 6-7.

### 3.    The Magistrate Correctly Recommended Dismissal of the ERISA Section 204(h) Claim for Failure to State a Claim.

Magistrate Shields correctly recommended dismissal of Claims I and II, brought pursuant to 29 U.S.C. § 1054(h)(1)(A), because the December 16, 1998 letter to Plan participants, sent fifteen days prior to the January 1, 1999 Conversion, notified them that as a result of the conversion, "accruals under the North Shore University Hospital Pension Plan will stop as of January 1, 1999" satisfying the requirements of applicable Treasury regulations at the time.  R&R 9-10 (citing *Register*, 477 F.3d at 72-73 (affirming Rule 12 dismissal when notice of 1999 conversion of pension plan to cash balance plan similarly informed participants of the plan amendment and effective date)).  In response, Plaintiffs cite to inapposite case law and invent notice requirements out of whole cloth.

First, Plaintiffs argue that they state a claim based upon the Second Circuit's decision in *Frommert v. Conkright*, 433 F.3d 254 (2d Cir. 2006).  Plaintiffs never cited *Frommert* in opposing Defendants' motion to dismiss, and for good reason.  *Frommert* has nothing to do with the facts alleged here.  In *Frommert*, Xerox was applying a "phantom offset" to reduce re-hired participants' benefits below the amount that participants were led to believe they would receive.  Xerox argued that the phantom offset was always in the plan so it did not need to provide a 204(h) notice to describe any "amendments" to the plan adding the offset. The Second Circuit disagreed on all fronts, as the Xerox plan did not include or disclose a phantom offset as part of the benefit formula; and provided that a participant's benefit would be more than Xerox was actually paying participants.  *Id.* at 265.

15

Further, Xerox contended that it "clarified" the plan to add the phantom offset later, but it did not tell participants about the clarification until several years after the fact. *Id.* at 266 ("Allowing 'tardy notice' several years after the effective date of an amendment to stand in for the advance notice that is actually required under § 204(h) upends the purpose of the provision."). Finally, the Second Circuit held that a 1998 SPD finally satisfied all of Xerox's disclosure requirements by "setting out how they [the offsets] are used to calculate rehired employees' benefits." *Id.* at 269. Here, the 204(h) notice told participants in advance that the old benefit formula was being frozen, and the 1999 SPD described exactly how employees' benefits were calculated in real time. There was no delay of "several years," and the SPD disclosures told participants exactly how the new Plan worked, including with the Joan example. Thus, *Frommert* does not help Plaintiffs.[8]

Second, Plaintiffs argue that the Magistrate erred because the 204(h) notice did not provide sufficient information about the conversion, such as details allowing them to determine their benefits after amendment. But the Magistrate correctly held that the requirements Plaintiffs press were simply not the law at the time. In the December 16, 1998 notice, pension plan participants were notified that, due to the forthcoming conversion, "accruals under the North Shore University Hospital Pension Plan *will stop* as of January 1, 1999." FAC ¶¶ 312-13 (emphasis added). The 1998 letter thus provided notice of the conversion and effective date. Moreover, since participants were told accruals under the old plan "will stop" altogether, this informed them of a reduction in benefit accrual. As the Magistrate correctly recognized, this is all that was required by ERISA

---

[8] Plaintiffs' other authority also does not help them. *Hirt v. Equitable Retirement Plan for Employees, Managers & Agents*, 441 F. Supp. 2d 516, 536-39 (S.D.N.Y. 2006) found one notice insufficient under Section 204(h) because it did not sufficiently describe the limitation of a grandfathering provision to a select group of employees and managers – facts inapposite to those alleged here. And regardless, all 204(h) claims in *Hirt* were found to be time-barred, *aff'd*, 533 F.3d 102 (2d Cir. 2008). *Infra* 22-23. And in *Hurlic v. Southern California Gas Co.*, 539 F.3d 1024, 1037-38 (9th Cir. 2008), no notice was sent prior to the plan amendment – again, facts not present here.

Section 204(h) in 1998.  R&R 10; *see* 29 U.S.C. § 1054(h) (1998) (requiring written notice "not less than 15 days before the effective date of the plan amendment, . . . setting forth the plan amendment and its effective date."); 26 C.F.R. § 1.411(d)-6T, A-10 (1998) (summary of amendment permitted and explaining "[t]he summary need not explain how the individual benefit of each participant or alternate payee will be affected by the amendment.").[9]

Moreover, the Second Circuit has held that a subsequent SPD providing further notice "unequivocally repudiate[es]" any prior misunderstanding.  *Pirro v. Nat'l Grid*, 590 F. App'x 19, 22 (2d Cir. 2014) (citing *Carey v. Int'l Broth. of Elec. Workers Loc. 363 Pension Plan*, 201 F.3d 44, 49 (2d Cir. 1999)).  Plaintiffs admit participants received a subsequent SPD detailing the conversion to a cash balance plan in 1999.  FAC ¶¶ 323, 326; Compl. Ex. A.  This robust disclosure indisputably provided a summary of the conversion.[10]

### 4.    The Magistrate Correctly Recommended Dismissal of Plaintiffs' Section 105 Claim for Failure to State a Claim.

Lastly, the Magistrate correctly concluded that Plaintiffs failed to state a claim under 29 U.S.C. § 1025 (Claim IV) because, unlike *Pessin*, the FAC did not allege that any Plaintiff received an account statement that failed to reflect the "total benefits accrued" and did not allege that the amount accrued by any Plaintiff was not the benefit they were entitled to receive.  R&R 17

---

[9] A few years later ERISA was amended to require the more detailed information in a Section 204(h) notice that Plaintiffs seek.  R&R 9; Pub. L. 107-16, 115 Stat. 38 (June 7, 2001) (amending 29 U.S.C. § 1054(h) to require the notice to "allow … individuals to understand the effect of the plan amendment"); 68 Fed. Reg. 17277-02, 17285 (April 9, 2003) (requiring a "description of the benefit or allocation formula" both "prior to the amendment" and "under the plan as amended" as well as "sufficient information for each applicable individual to determine the approximate magnitude of the expected reduction for that individual").  But those amendments did not apply years before they actually became law.  *Register*, 477 F.3d at 73 (affirming the lower court's dismissal for failure to state a claim, reasoning that "all that was required" was a statement of the "plan amendment and effective date" not "'how the individual benefit of each participant or alternate payee will be affected by the amendment.'") (citing 26 C.F.R. § 1.411(d)-6T, A-10).

[10] The Objections vaguely invoke *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), Objections 5-6, but do provide any coherent argument as to why that decision would be applicable here.  The R&R correctly interpreted the statute and applicable regulatory language, and Plaintiffs have no articulated or viable argument to the contrary.

17

(distinguishing *Pessin*, 112 F.4th at 141).   As the Magistrate explained "Plaintiffs never allege that they themselves received deficient statements, or even how they were deficient.   Rather, Plaintiffs conclusory state that the amount accrued under the cash balance formulas was not the benefit *class members* were entitled to receive.  Plaintiffs fail to provide any facts to support such a conclusion. …. Therefore, at this juncture, this pleading defect is fatal to Plaintiffs' §105 claim." R&R 17 (emphasis added).

Plaintiffs' efforts to explain away their pleading deficiency only confirm it.  Each of the allegations cited by Plaintiffs' objections are conclusory allegations regarding account statements purportedly received by unnamed putative class members, rather than factual allegations regarding account statements received by the Plaintiffs and how those statements were purportedly deficient. Objections 17-18 (citing FAC ¶¶ 401-405).  The Magistrate correctly recommended that Plaintiffs' Section 105 claim be dismissed.

**B.     The Magistrate Correctly Found That Plaintiffs' Claims Are Time-Barred**

**1.     Plaintiffs' Breach of Fiduciary Duty Claims (Count VII) Are Time-Barred.**

Under 29 U.S.C. § 1113, absent fraud or concealment, a breach of fiduciary duty action must be brought six years after the date of act constituting the breach or three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation, whichever is earlier. The "six-year limitations period is a *statute of repose* that begins running … on the date of the last action constituting a breach … irrespective of whether the injured party knows of the conduct or injury." *Browne v. CTC Corp.*, 15 F.4th 175, 190 (2d Cir. 2021).  And a statute of repose is not an affirmative defense, so Plaintiffs bear the burden of alleging facts demonstrating their claims are timely.  *Id.*  Here, all of the actions alleged in the FAC as the basis of the breach of fiduciary duty occurred by 1999.  *See* Objections 12, 21-22; FAC ¶¶ 119, 214, 312, 315-30 (listing

18

communications alleged to be misleading that occurred in 1998 and 1999 – in the December 16, 1998 204(h) notice; the January 1, 1999 retirement brochure; January 6, 1999 letter; and 1999 SPD).  Accordingly, the six-year period ran by 2005 at the latest, and the Magistrate properly concluded that Count VII is time-barred.  R&R 21.[11]

Plaintiffs attempt to end-run around both the law and facts clearly indicating that Count VII is time-barred by arguing that the FAC adequately pled fraud or concealment.  They are wrong, however, as the Magistrate correctly found.  R&R 22 ("Plaintiffs' boilerplate allegations that the potential for "wear-away" was concealed in "misleading statements" [] are insufficient to satisfy Plaintiffs' heightened pleading burden for such claims.").  The fraud or concealment exception to 29 U.S.C. § 1113 applies if the fiduciary "(1) breached its duty by making a knowing misrepresentation or omission of a material fact to induce an employee/beneficiary to act to his detriment; or (2) engaged in acts to hinder the discovery of a breach of fiduciary duty."  *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 189-90 (2d Cir. 2001).  A plaintiff must plead fraud or concealment "with particularity" specifying the "time, place, speaker, and content of the alleged misrepresentations," explain "how the misrepresentations were fraudulent," and describe events giving rise to a "strong inference" that the defendant had "an intent to defraud, knowledge of the falsity [of the statements], or a reckless disregard for the truth."  *Carfora v. Tchrs. Ins. Annuity Ass'n of Am.*, 631 F. Supp. 3d 125, 155 (S.D.N.Y. 2022) (quoting *Janese v. Fay*, 692 F.3d 221, 228 (2d Cir. 2012)).  Plaintiffs here met none of these requirements.

---

[11]  The public record also reflects that in 2002 some putative class members had actual knowledge that their cash balance benefits were lower than the traditional plan benefits. *See* Susan Harrigan, *No Fan of Pension Conversions*, Newsday, 2002 WLNR 498499 (Dec. 14, 2002) (putative class member Harold Morch voiced public dissatisfaction with the conversion's effect on his pension—specifically, that under the cash balance plan he would receive "less than" he would have received under the prior plan—and that he was considering filing class action claims against North Shore at that time and had "seen a lawyer").  A court can take judicial notice of this sort of Newsday article as a matter of public record. *See Belyea v. City of Glen Cove*, No. 20-cv-5675, 2022 WL 3586559, at *6 (E.D.N.Y. Aug. 22, 2022) (in ruling on 12(b)(6) motion, court took "judicial notice" of "Newsday article … [as a] matter[] of public record").

Indeed, although Plaintiffs provide examples from the FAC that they claim demonstrate fraud or concealment (Objections 19), each of the allegations are blatantly conclusory and could never satisfy a plaintiff's heightened burden.  For example, the FAC's allegations that  "[a]*ny written notice that was provided* contained false or misleading material misstatements or omissions that concealed that the amendment provided for a significant reduction in the rate of future benefit accrual …" (FAC ¶ 361) and there was a "pattern of fraud and fraudulent *concealment found in most if not all of Defendants' communications* with participants about the Cash Balance Formula" (FAC ¶ 397) are not facts at all, let alone facts pled with particularity under Fed. R. Civ. P. 9(b) (emphasis added).  They, therefore, are insufficient to qualify for the fraud or concealment exception. *See, e.g.*, *Perlman v. Gen. Elec.*, No. 24-514, 2024 WL 4635235, at *2 (2d Cir. Oct. 31, 2024) (affirming dismissal of breach of fiduciary duty claim as time-barred because plaintiffs did not sufficiently plead fraud or concealment).

Plaintiffs' other examples fare no better.  They point to allegations restating the text of a letter saying that the retirement program provided "financial security" and that the value of the cash balance account will grow over their career, and claim these support fraud or concealment. FAC ¶¶ 313, 315.[12]  But the FAC does not allege that the plan did not provide financial security, or that the cash balance account did not grow.  Instead, the FAC alleges that the cash balance account might grow but still be less than the minimum benefit.  But that is already in the 1999 SPD several times, including the "minimum benefit" provision in the 1999 SPD.  *See also, e.g.*, *Losquado v. FGH Realty Credit Corp.*, 959 F. Supp. 152, 157-58 (E.D.N.Y. 1997) (plaintiffs not entitled to fraud or concealment exception where there were no allegations as to "how [the] misrepresentations were concealed by fraud or otherwise").  Ultimately none of the allegations

---

[12]  See also FAC ¶¶ 318, 321, and 325 (repeating text from SPD).

Plaintiffs point to give rise to a "strong inference that the defendant had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Carfora*, 631 F. Supp. 3d at 155 (quoting *Janese*, 692 F.3d at 228). Claim VII is time-barred. R&R 21-22.

### 2.    Plaintiffs' SPD Claims (Count III, V, VI) Are Time Barred.

Federal courts in this district have concluded that ERISA Section 102 claims are governed by a three-year statute of limitations. *See, e.g.*, *Hudson v. Nat'l Football League Mgmt. Council*, No. 18-4483, 2019 WL 5722220, at *23 (S.D.N.Y. Sep. 15, 2019), *R. &. R. adopted*, 2019 WL 4784680 (S.D.N.Y. Sep. 30, 2019). Under federal law, a cause of action "accrues" when the plaintiff has a "complete and present cause of action" – i.e., when she has the right to "file suit and obtain relief." *Corner Post, Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 603 U.S. 799, 809 (2024) (internal citations omitted); *see also Gabelli v. SEC*, 568 U.S. 442, 448 (20.13) ("The 'standard rule' is that a claim accrues when the plaintiff has a complete and present cause of action.") (internal citations omitted). This applies even if the plaintiff is unaware of the cause of action. *E.g.*, *Rotkiske v. Klemm*, 589 U.S. 8, 10 (2019) ("the statute of limitations … begins to run on the date on which the alleged [] violation *occurs*, not the date on which the violation is *discovered*") (emphases added). This is true "even though the full extent of the injury is not then known or predictable." *Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015) (citations omitted).

Plaintiffs admit that "in 1999, Joan would almost certainly have been subject to … wear-away." FAC ¶ 206. They also do not contest that they were able to calculate wear-away for Joan and for Jerome Scherer using only the information from the 1999 SPD. FAC ¶¶ 298-309. Equally undisputed is that the 1999 SPD informed participants that they could have a "shortfall" of benefit and there was "no guarantee that the post-conversion benefits would meet or exceed those that the former plan would have provided." Compl. Ex. A § A.2(A); R&R 22. Accordingly, the Magistrate properly concluded that regardless of whether the 1999 SPD complied with ERISA Section 102

21

(it did comply), Plaintiffs had the information necessary to assert their Section 102 claims in 1999. R&R 21 ("Hence, Plaintiffs had the information necessary to assert these claims in December 1999, when they received the SPD, as the claims contained in the Amended Complaint are calculated using the information from the 1999 SPD."); c*f. Keen v. Lockheed Martin Corp.*, 486 F. Supp. 2d 481, 489 (E.D. Pa. 2007) (explaining with respect to accrual of ERISA claims, plaintiffs "need not predict the future, but they must investigate the present"); *see supra* 19 n.11 (Newsday article confirming putative class members were aware at the time of wear-away's potential effect on their accounts).

Plaintiffs again allege that the Magistrate erred by not applying the fraud and concealment exception to the SPD claim (Objections 20-22), but the statutory exception under 29 U.S.C. § 1113 on its face does not apply to non-fiduciary claims. Plaintiffs do not cite to any authority suggesting otherwise. And even if the fraud and concealment exception could apply to the SPD claim, Plaintiffs' boilerplate allegations are insufficient. *Supra* 20-21; R&R 22.

### 3. Plaintiffs' ERISA Section 204(h) Claims (Counts I and II) Are Time-Barred.

Plaintiffs do not dispute that their ERISA Section 204(h) claims are subject to a six-year statute of limitations. *See, e.g.*, *Hirt*, 285 F. App'x at 803-04; *Pirro*, 590 F. App'x at 21. Nor do they dispute that they received the Section 204(h) notice on December 16, 1998 and a later SPD in 1999. FAC ¶¶ 312-13; ECF No. 1 Ex. A. Moreover, even if the 1998 notice was insufficient (it was not), "a subsequent SPD providing additional information unequivocally repudiates any misunderstanding and notice claims begin to accrue upon a subsequent disclosure." R&R 20-21 (citing *Hirt*, 285 F. App'x at 803-04). As a result, the statute of limitations on the Section 204(h) notice claims expired, at latest, in December 2005. R&R 21.

22

Plaintiffs protest that the Magistrate erred in finding these claims time-barred because there was fraud or concealment and that the six-year statute of limitations should have begun to run after they discovered the existence of wear-away.  Objections 18-20.  However, the only authority Plaintiffs quote on fraud and concealment makes it clear, once again, that this exception only applies to breach of fiduciary duty claims, not Section 204(h) claims.  *See Caputo*, 267 F.3d at 188-89 (discussing the six-year fraud and concealment exception contained in 29 U.S.C. § 1113 as applied to *breach of fiduciary duty claims*).  And even if this statutory language could apply to Section 204(h) claims, which it does not, Plaintiffs did not adequately allege fraud or concealment. R&R 22; s*upra* 20-21.

### 4.    Plaintiffs' Benefit Statement Claims (Count IV) Are Time-Barred.

Plaintiffs do not contest, and thus concede, that they can only enforce Section 105 claims through the penalty provision 29 U.S.C. § 1132(c) but do not mention or plead any claims under § 1132(c) in the FAC.[13]  They also do not dispute the Magistrate's conclusion that the statute of limitations for their benefit statement claim is one year because it borrows the most closely analogous New York statute of limitations.  R&R 22-23 (citing N.Y. C.P.L.R. 215(4) and noting that Plaintiffs did not propose any different statute of limitations in their Opposition).  Plaintiffs also do not dispute that the FAC lacks any assertion that any Plaintiff received a deficient benefit statement within the one-year period prior to their October 11, 2024 Amended Complaint or any specific allegations regarding when they received purportedly deficient quarterly statements.  *See* R&R 23 (citing FAC ¶¶ 399-406).

Instead, Plaintiffs argue that the Magistrate was wrong in concluding that the Plaintiffs did not sufficiently allege concealment or fraud, and should have applied the longer six-year statute of

---

[13] This is an independent basis for dismissal.  ECF No. 38-1 at 18-19

limitations.  Objections 1, 18-19.  But yet again, Plaintiffs are wrong.  29 U.S.C. § 1113 does not apply to Section 105 claims, and even if it did, Plaintiffs did not plead sufficient facts to qualify. Further, as the Magistrate correctly found, "Plaintiffs admit that they were on notice that their benefit statement allegedly failed to include information on their pre-conversion minimum benefits upon receipt of the statements."  R&R 23; FAC ¶ 401 ("the statement contained only the Cash Balance Account"); *Hirt*, 285 F. App'x at 804.

Nor do Plaintiffs' arguments that their benefit claim "relates back" to original complaint under Fed. R. Civ. P. 15(c)(1) save their claim.  Opposition 23-24.  Plaintiffs assert that the benefit statement claim arises from the same conduct as all of their other claims because they all relate to the Defendants' conversion of the pension plan and messaging surrounding it.  But the relation-back cases do not characterize "conduct" this broadly.  The Magistrate here correctly concluded that the new benefit statement claim added in the FAC did not relate back to the original complaint because it was based on different and completely discrete conduct -- issuing benefit statements -- than the other claims premised on the 1998 204(h) notice, and 1999 SPD.  *See, e.g.*,  *Hirsh v. Suffolk County*, No. 08-2660, 2015 WL 1275461, at *8 (E.D.N.Y. Mar. 8, 2015), *aff'd sub nom.*, *Hirsch v. Pernat*, 684 F. App'x 53 (2d Cir. 2017) ("[W]here the new claims arise from conduct that is separate from yet related to the conduct alleged in the earlier pleading, the new claims will not relate back."); *Leber v. CitiGroup 401(k) Plan Inv. Comm.*, 129 F. Supp. 3d 4, 10, 17, 19 (S.D.N.Y. 2015); R&R 23-24.  Regardless, because the FAC does not allege that Plaintiffs received *any* benefit statements within one year prior to their filing of the original complaint on April 15, 2024, even if the relation back doctrine were to apply, it would not provide any relief to their time-barred Section 105 claims.

24

### C.   No Leave to Replead Should Be Granted

Plaintiffs' request for leave to replead should be denied.  First, Plaintiff have had eighteen months to file another amended complaint if they wanted to do so.  Plaintiffs have been on notice of the deficiencies found by the Magistrate Judge since at least November 2024, when Defendants submitted their pre-motion letter after Plaintiffs filed their First Amended Complaint.  One purpose of the pre-motion conference requirement is to put plaintiffs on notice of defendants' arguments so plaintiffs can amend the complaint to address them if they can.  Here, Plaintiffs could have sought leave to file a Second Amended Complaint in November 2024, or in response to Defendants' motion to dismiss filed in January 2025, or in the fourteen months since then.  They chose not to do so, and instead decided to rest on their First Amended Complaint.  Under these circumstances, "plaintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies."  *In re Eaton Vance Mutual Funds Fee Litig.*, 403 F. Supp. 2d 310, 318 (S.D.N.Y. 2005) (internal citations omitted); *see also Kyszenia v. Ricoh USA, Inc.*, 583 F. Supp. 3d 350, 371 (E.D.N.Y. 2022) (denying leave to amend where plaintiffs filed prior amended complaint "with the Court's permission, after the pre-motion conference on January 14, 2021, where the parties discussed issues in their pre-motion letters"); *U.S. ex rel. Gallian v. AmerisourceBergen Corp.*, No. 16-02458, 2022 WL 20611664, at *7 (E.D.N.Y. Dec. 22, 2022) (similar).

Second, Plaintiffs have not complied with the Local Rules by including a copy of their proposed amended complaint and a version of their proposed amended complaint showing the changes from the First Amended Complaint.  Local Rule 15.1.  Plaintiffs do not identify how their proposed—and undisclosed— new amended complaint would make their claims timely and otherwise state any claims for relief, or how it would vary from the existing complaint.  That is improper and further grounds for denying Plaintiffs' request to amend.  *Landmark Ventures, Inc.*

25

*v. Wave Sys. Corp.*, 513 F. App'x 109, 112 (2d Cir. 2013) (affirming the district court's denial of leave to amend when the plaintiff's request "consisted of a single sentence in its memorandum in opposition to the defendants' motion to dismiss"); *Food Holdings Ltd. v. Bank of Am. Corp.*, 423 F. App'x 73, 76 (2d Cir. 2011) (similar).  Leave to amend should be denied.

## IV.    <u>CONCLUSION</u>

For each and all of the forgoing reasons, Defendants request that Plaintiffs' Objections be overruled, the R&R be adopted in its entirety, and the FAC be dismissed with prejudice.

Dated:  New York, New York
     May 4, 2026

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP
By: */s/ Melissa D. Hill*
    Melissa D. Hill
    Gina F. McGuire
    101 Park Avenue
    New York, New York 10178
    Tel: (212) 309-6000
    Fax: (212) 309-6001
    melissa.hill@morganlewis.com
    gina.mcguire@morganlewis.com

    Jeremy P. Blumenfeld
    2222 Market Street
    Philadelphia, PA 19103
    Tel: (215) 963-5000
    Fax: (215) 963-5001
    jeremy.blumenfeld@morganlewis.com

    *Attorneys for Defendants*

## CERTIFICATION OF COMPLIANCE WITH LOCAL CIVIL RULE 7.1(C)

Pursuant to Local Civil Rule 7.1(c), I hereby certify that this brief contains less than 8,750 words, excluding the caption, table of contents, table of authorities, signature blocks and any required certificates.

_/s/ Melissa D. Hill_
Melissa D. Hill

## CERTIFICATE OF SERVICE

I hereby certify that I caused to be served via email a true and correct copy of the foregoing Response to Objections to Report and Recommendation on this 4th day of May, 2026, on all counsel of record.

_/s/ Melissa D. Hill_
Melissa D. Hill