UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------

WILLIAM LORUSSO, MARGARET GURLIDES, LINDA MORIARTY, RICHARD SEABERG, GARY LEONARD, CAROL VORPERIAN, NICHOLAS CAMPAGNOLA, JEROLD SCHERER, DENISE BEVILACQUA, and KAREN CERVANTES, on behalf of themselves and all others similarly situated,

    Plaintiffs,

     -against-

NORTHWELL HEALTH PENSION PLAN, NORTH SHORE UNIVERSITY HOSPITAL, NORTHWELL HEALTH, INC., PENSION COMMITTEE, and ABC PENSION COMMITTEES 1-20 (SAME NAMES BEING FICTITIOUS),

    Defendants.
-------------------------------X

MEMORANDUM & ORDER
24-CV-2785(JS)(AYS)

APPEARANCES

For Plaintiffs:         Jessica Lynne Lukasiewicz, Esq.
                              James Nelson Thomas, Esq.
                              Thomas & Solomon PLLC
                              693 East Avenue
                              Rochester, New York 14607

For Defendants:        Gina Farinella McGuire, Esq.
                              Melissa D. Hill, Esq.
                              Morgan Lewis & Bockius LLP
                              101 Park Avenue
                              New York, New York 10178

                              Jeremy P. Blumenfeld, Esq.
                              Morgan Lewis & Bockius LLP
                              2222 Market Street
                              Philadelphia, Pennsylvania 19103

SEYBERT, District Judge:

On April 15, 2024, Plaintiffs William Lorusso, Margaret Gurlides, Linda Moriarty, Richard Seaberg, Gary Leonard, Carol Vorperian, Nicholas Campagnola, Jerold Scherer, Denise Bevilacqua, and Karen Cervantes (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, commenced this Employee Retirement Income Security Act ("ERISA") action against Defendants Northwell Health Pension Plan, North Shore University Hospital, Northwell Health, Inc., Pension Committee, and "ABC Pension Committees 1-20" (collectively, "Defendants"). (See generally, Compl., ECF No. 1.)  In their original Complaint, Plaintiffs asserted three ERISA claims against Defendants based upon their alleged failure to properly and adequately notify plan participants before the conversion of North Shore University Hospital's pension plan ("Prior Plan") to a cash balance plan ("Cash Balance Plan") in 1999 ("1999 Conversion").

On July 19, 2024, Defendants filed a pre-motion conference letter regarding their anticipated motion to dismiss the Complaint.  (See ECF No. 25.)  On August 2, 2024, the Court set a briefing schedule for Defendants' motion to dismiss.  (See Aug. 2, 2024 Elec. Order.)  In response, Plaintiffs requested an extension of time to amend the Complaint, which was granted.  (See ECF No. 28; Sept. 20, 2024 Elec. Order.)  On October 11, 2024, Plaintiffs filed the First Amended Complaint ("FAC") asserting the

2

following seven causes of action: violations of 29 U.S.C. § 1054(h) based upon Defendants' failure to provide timely and adequate notice to plan participants prior to the 1999 Conversion (Claims I and II); violations of 29 U.S.C. § 1022 based upon Defendants' failure to adequately or truthfully disclose the import and impact of the 1999 Conversion on plan participants' benefits (Claims III, V, and VI); violation of 29 U.S.C. § 1025(a)(1)(B) based upon Defendants' distribution of quarterly benefits statements that failed to disclose to plan participants the "minimum benefit" to which they were entitled (Claim IV); and, breach of fiduciary duty pursuant to 29 U.S.C. § 1104(a) (Claim VII). (See generally, FAC, ECF No. 30.)

On November 12, 2024, Defendants renewed their pre-motion conference request for a motion to dismiss the FAC. (See ECF No. 31.) Plaintiff opposed that request. (See ECF No. 33.) The Court then set a briefing schedule for Defendants' motion to dismiss the FAC ("Motion"). (See Dec. 19, 2024 Elec. Order.) On April 15, 2025, Defendants timely filed the fully briefed Motion. (See Mot., ECF No. 38.) This Court referred the Motion to Magistrate Judge Anne Y. Shields ("Judge Shields" or "Magistrate Judge") for a Report and Recommendation ("Report" or "R&R") on October 9, 2025. (See Oct. 9, 2025 Elec. Order.)

On February 18, 2026, Judge Shields issued a Report recommending the Court grant Defendants' Motion in its entirety.

3

(See R&R, ECF No. 39.)  Accepting Plaintiffs' allegations in the FAC as true, the Report reasoned: Claims I and II failed to state a claim because Defendants timely provided plan participants "proper notice" regarding the 1999 Conversion, as required by the law at the time (id. at 9-10); Claims III and V-VII failed to state a claim because Defendants' disclosures explaining the 1999 Conversion and its impact on plan participants' benefits complied with ERISA's requirements at the time (see id. at 10-16); Claim IV failed because the FAC provides no factual support for the claim Plaintiffs received unlawfully deficient quarterly benefits statements (see id. at 16-18); and, moreover, all Plaintiffs' claims failed not only on the merits, but because they were untimely (see id. at 18-24).

On April 3, 2026, Plaintiffs filed objections to Judge Shields's R&R.  (See Pls.' Objs., ECF No. 41.)  On May 4, 2026, Defendants responded to Plaintiffs' objections.  (See Defs.' Resp. to Objs., ECF No. 42.)  Finally, on May 26, 2026, upon the Court's grant of Plaintiffs' request for an opportunity to reply, Plaintiffs replied in further support of their objections.  (See Pls.' Objs. Reply, ECF No. 43).

For the reasons stated herein, Plaintiffs' objections are OVERRULED, and the R&R is ADOPTED.  Thus, Defendants' Motion to Dismiss is GRANTED in its entirety, and Plaintiffs' request for leave to amend the FAC is DENIED.

BACKGROUND

I.   Factual and Procedural Background

The Court presumes the parties' familiarity with, adopts, and incorporates herein, the factual and procedural background as set forth in the R&R.  (See R&R at 3-8.)  See generally Sali v. Zwanger & Pesiri Radiology Grp., LLP, No. 19-CV-0275, 2022 WL 819178, at *1 (E.D.N.Y. Mar. 18, 2022) (where no party challenges magistrate judge's recitation of the factual and procedural background of the case, adopting and incorporating same into court's order).

II.  Judge Shields's R&R

First, Judge Shields recommended this Court dismiss Claims I and II of the FAC, which allege Defendants failed to provide plan participants adequate and timely notice of the 1999 Conversion in violation of 28 U.S.C. § 1054(h) ("Section 204"), because Defendants satisfied the notice requirements applicable at the time of said Conversion.  (See R&R at 9-10); see also 29 U.S.C. § 1054(h)(1)(A) (1997).

Second, Judge Shields recommended dismissal of Claims III, V, and VI, which alleged violations of 29 U.S.C. § 1022 ("Section 102"), as well as Claim VII, alleging a breach of fiduciary duty in violation of 29 U.S.C. § 1104(a)(1) ("Section 404(a)").  (See R&R at 10-16.)  Plaintiffs based these claims on

5

Defendants' failure to disclose "wear-away"[1] in the summary plan description ("SPD") and other alleged false and misleading disclosures about the 1999 Conversion and its impact on participants' benefits.  (See id. at 10.)  Applying Pessin v. JPMorgan Chase, 112 F.4th 129 (2d Cir. 2024), Judge Shields found the SPD complied with Section 102 and adequately notified plan participants of potential wear-away and how it may ultimately impact participants' benefits, even though Defendants did not explicitly use the term "wear-away."  (See R&R at 12-14.)  The R&R also found the FAC failed to allege Defendants intentionally withheld information or affirmatively misled participants into believing they were better off under the new Cash Balance Plan. (See id. at 13-14.)  Moreover, the R&R recommended dismissal of Plaintiffs' Section 404(a) claim because the disclosures surrounding the 1999 Conversion sufficiently notified participants they might receive a "minimum benefit" (equal to their benefits accrued under the Prior Plan before the amendment's effective date)

---

[1] In the retirement benefits context, wear-away occurs when a plan amendment reduces future benefit accruals, causing a participant's existing accrued benefit to exceed the amount he earns under the new formula. See Pessin v. JPMorgan Chase, 112 F.4th 129, 134 n.3 (2d Cir. 2024) ("'[W]ear-away' describes the period when 'any pay and interest credits earned by a participant would not increase his or her actual benefits, but merely reduce the gap between the value of the participant's cash balance account and the participant's old benefits.'").  This effectively freezes a participant's benefit growth for a period until the accruals under the new formula catch up to what was earned under the prior plan. See id.

rather than the benefit accrued under the Cash Balance Plan.  (See id. at 14-16.)

Finally, Judge Shields recommended dismissing Claim IV, which alleged Defendants provided plan participants deficient quarterly benefits statements that did not reflect the "minimum benefit" participants were entitled to in violation of 29 U.S.C. § 1025(a)(1)(B) ("Section 105").  (See id. at 16.)  The Magistrate Judge found the claim fatally deficient, in part, because the FAC failed to allege Plaintiffs were entitled to a "minimum benefit" different from what was reflected on the quarterly benefits statements they received.  (See id. at 17-18.) The Magistrate Judge also found the "relation-back" doctrine does not render this claim timely because Plaintiffs' original Complaint made no mention of the quarterly benefits statements and challenged only Defendants' disclosures regarding the 1999 Conversion.  (See id. at 23-24.)

III. Plaintiffs' Objections to the R&R

Plaintiffs assert six primary objections to Judge Shields's recommendations.

First, Plaintiffs object to Judge Shields's recommendation Plaintiffs failed to successfully state a Section 204(h) claim based upon Defendants' deficient notice of the 1999 Conversion.  (See Pls.' Objs. at 2-6.)  Plaintiffs contend Judge Shields erred by concluding the law only required Defendants to

7

inform participants of the transition to a Cash Balance Plan and its effective date without disclosing any significant reduction in benefits or the substance of the plan amendment in a manner understandable to the average plan participant.  (See id.)

Second, Plaintiffs object to Judge Shields's recommendation Defendants' SPD detailing the 1999 Conversion complied with Section 102.  (See id. at 6-11.)  Plaintiffs contend the SPD was unclear and confusing to the average plan participant and obscured significant benefits losses behind overly technical and actuarial jargon.  (See id. at 7-10.)  Further, Judge Shields erred by interpreting the SPD's discussion of potential "shortfall[s]" and non-guarantee of certain benefits as an adequate disclosure of the plan's wear-away effect.  (See id. at 8-10.)

Third, Plaintiffs object to Judge Shields's recommendation that Plaintiffs' Section 404 breach of fiduciary duty claim fails.  (See id. at 13-16.)  Plaintiffs maintain Defendants breached their fiduciary duty by issuing materially false and misleading statements designed to conceal the Cash Balance Plan's wear-away effect and the resulting reductions in benefit accruals.  (See id.)

Fourth, Plaintiffs object to Judge Shields's recommendation that the FAC failed to state a claim pursuant to Section 105 based upon Defendants' distribution of deficient

8

benefits statements.  (See id. at 16-18.)  Plaintiffs argue Judge Shields erred by finding the FAC's allegations merely conclusory; Plaintiffs contend they adequately pleaded the benefits statements reported only the benefits accrued under the Cash Balance formula rather than Plaintiffs' "total accrued benefits," thereby omitting required information about the "minimum benefit" to which participants were actually entitled.  (See id.)

Fifth, Plaintiffs object to Judge Shields's recommendation that Plaintiffs' claims are untimely.  (See id. at 18-24.)  Plaintiffs argue Judge Shields failed to apply ERISA's automatic six-year statute of limitations for fraud or concealment to all claims, which begins to run only after Plaintiffs discovered the violations.  (See id. at 19.)  Plaintiffs maintain the FAC articulates a pattern of Defendants' concealment and misleading communications intended to assure participants of future financial security while actively hiding underlying ERISA violations.  (See id. at 19-20.)  They further contend Judge Shields improperly found participants had all the information necessary to bring these claims in 1999 because the actuarial assumptions underlying the 1999 Conversion intentionally confused the average plan participant and thus could be clarified only by an expert actuary.  (See id. at 20-22.)  Further, according to Plaintiffs, the relation-back doctrine independently saves their Section 105 claim because the new allegations about the benefits statements arise

9

from the same conduct at issue in the original Complaint (i.e., the 1999 Conversion and its surrounding messaging).  (See id. at 23-24.)

Finally, although the R&R does not expressly recommend Plaintiffs be denied the ability to replead their claims, Plaintiffs object to any recommendation denying leave to amend the FAC.  (See id. at 24.)

Defendants did not file any objections to the R&R; instead, they submitted a response to Plaintiffs' objections supporting Judge Shields's recommendations.  (See generally Defs.' Resp. to Objs.)  In sum, Defendants argue: the FAC is replete with conclusory allegations unsupported by facts sufficient to state a claim; the R&R correctly determined all of Plaintiffs' claims are time-barred; the "fraud or concealment" exception extends the limitations period only for breach of fiduciary duty claims under 29 U.S.C. § 1113, not Plaintiffs' non-fiduciary SPD, notice, or benefits statements claims (Claims I-VI); and, Plaintiffs should be denied leave to replead because they neither timely cured the FAC's deficiencies nor complied with Local Civil Rules governing motions to amend pleadings.  (See id.)

The Court finds Plaintiffs' objections to be without merit and addresses each, in turn, below.

10

DISCUSSION

I.   Legal Standards

A. Report and Recommendation

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C); see also FED. R. CIV. P. 72(b)(3). The district judge must evaluate proper objections de novo.  See Nambiar v. Cent. Orthopedic Grp., LLP, 158 F.4th 349, 358 (2d Cir. 2025) (citing Arista Recs., LLC v. Doe 3, 604 F.3d 110, 116 (2d Cir. 2010)).  A proper objection must: (1) be timely; (2) be specific; and (3) "may not raise new arguments not previously made before the magistrate judge."  See id. at 359.  Even if a party's objections repeat an argument previously raised before the magistrate judge, if that objection takes issue with a specific legal conclusion in the report and recommendation, the court must review that objection de novo.  Id. at 361 ("[A] litigant objecting to an R&R . . . must lodge a specific objection to some specific aspect of the R&R . . . .  When a timely filed objection raises and properly briefs arguments previously rejected by the magistrate judge, the district judge must review those arguments de novo.").  However, where objections are not proper, such as "nonspecific" or "merely perfunctory" objections, the court reviews the report and recommendation only for clear error. See id.  Moreover, the court need not review findings and

11

conclusions to which no proper objection has been made.  See Thomas v. Arn, 474 U.S. 140, 150 (1985).

Courts conducting de novo review of specific written objections to a report and recommendation are "not require[d] . . . to conduct a new hearing; rather, it mandates that the [c]ourt give fresh consideration to those issues to which specific objections have been made."  Jarvis v. Funny Bone Comedy Club, No. 25-CV-0645, 2025 WL 3653544, at *1 (N.D.N.Y. Dec. 17, 2025) (quoting A.V. by Versace, Inc. v. Gianni Versace, S.p.A., 191 F. Supp. 2d 404, 406 (S.D.N.Y. 2002)).  Courts conducting clear error review of improper objections find clear error present "when upon review of the entire record, the court is left with the definite and firm conviction that a mistake has been committed." Merritt v. Tioga County Dep't of Soc. Servs., No. 25-CV-0695, 2025 WL 3644233, at *1 (N.D.N.Y. Dec. 16, 2025) (quoting Rivera v. Fed. Bureau of Prisons, 368 F. Supp. 3d 741, 744 (S.D.N.Y. 2019)).

Additionally, "[i]t is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not."  Tevac, Inc. v. Dynamics eShop, Inc., No. 19-CV-3650, 2022 WL 4483439, at *3 (E.D.N.Y. Sept. 27, 2022) (quoting Zhao v. State Univ. of N.Y., No. 04-CV-0210, 2011 WL 3610717, at *1 (E.D.N.Y. Aug. 15, 2011)); see also Page v. Ellenoff Grossman & Schole LLP, No. 22-CV-4453,

12

2023 WL 4841916, at *1 (S.D.N.Y. July 28, 2023) ("[T]he Court need not consider arguments contained in the objections that were not raised initially before the magistrate judge . . . ."), aff'd, No. 23-1199, 2024 WL 4195137 (2d Cir. Sept. 16, 2024).

B. Motion to Dismiss

A cause of action is properly dismissed pursuant to Rule 12(b)(6) where it "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  In evaluating a Rule 12(b)(6) motion, courts must "accept as true all factual allegations contained in the Complaint and draw all inferences in plaintiff's favor." Glob. Network Commc'ns, Inc. v. City of N.Y., 458 F.3d 150, 154 (2d Cir. 2006).  A complaint must allege "enough facts to state a claim to relief that is plausible on its face." Basile v. Levittown United Tchrs., 17 F. Supp. 3d 195, 200 (E.D.N.Y. 2014) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Although a complaint facing dismissal under Rule 12(b)(6) need not include detailed factual allegations, a plaintiff must articulate the grounds of its entitlement to relief beyond mere "labels and conclusions." Twombly, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action" is insufficient. Id.  Thus, a pleading supported only by legal conclusions disguised as facts cannot survive a motion to dismiss.  See Garcia v. Paylock, No. 13-CV-2868, 2014 WL 298593, at *4 (E.D.N.Y. Jan. 28, 2014)

13

(citation omitted); Iqbal, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

A court's evaluation of a motion to dismiss under Rule 12(b)(6) is limited to the following: (1) factual allegations in the complaint; (2) documents attached as an exhibit or incorporated by reference into the complaint; (3) matters of which judicial notice may be taken; and (4) documents "upon whose terms and effect the complaint relies heavily, i.e., documents that are 'integral' to the complaint." D.C. v. Copiague Union Free Sch. Dist., No. 16-CV-4546, 2017 WL 3017189, at *3 (E.D.N.Y. July 11, 2017).

## II. Analysis

### A. Plaintiffs' Objections Warrant *De Novo* Review

Unless otherwise explained below, Plaintiffs' objections are proper because they are timely, specific, and do not include new arguments not previously made before Judge Shields. Thus, the Court reviews Judge Shields's Report de novo.

### B. Plaintiffs' Objections

#### 1. Objection 1: Plaintiffs Successfully Pleaded a Section 204(h) Notice Claim

Plaintiffs first assert the Magistrate Judge erred by recommending dismissal of Plaintiffs' Section 204(h) notice claim because the Magistrate Judge wrongly found Defendants were only required to notify participants of the 1999 Conversion and its

14

effective date without providing the amendment itself or notice of any resulting "significant reduction in benefits."  (Pls.' Objs. at 2-3.)

At the time of the 1999 Conversion, a plan could not be amended "to provide for a significant reduction in the rate of future benefit accrual" unless the plan administrator provided written notice to all plan participants, at least 15 days prior to the amendment, "setting forth the plan amendment and its effective date."  29 U.S.C. § 1054(h) (1997).  Plan administrators need not provide participants with the text of the amendment, so long as an adequate summary of the amendment, "written in a manner calculated to be understood by the average plan participant," was included in the notice.  26 C.F.R. § 1.411(d)-6, Q&A 10 (1998).

In their objections, for the first time, Plaintiffs cite Frommert v. Conkright to argue the Magistrate Judge should have found Defendants' December 16, 1998, letter to participants about the 1999 Conversion ("Letter") inadequate pursuant to Section 204(h).  433 F.3d 254, 268-69 (2d Cir. 2006).  However, "[i]t is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not."  Tevac, 2022 WL 4483439, at *3 (emphasis added) (quoting Zhao v. State Univ. of N.Y., No. 04-CV-0210, 2011 WL 3610717, at *1 (E.D.N.Y. Aug. 15, 2011)).

15

Thus, Plaintiffs' reliance upon Frommert in support of their objections will not now be considered. But to avoid any doubt, if the Court did consider this argument, it would agree with Defendants' characterization of Frommert and its irrelevance to Plaintiffs' Section 204(h) claims: Frommert "arose under completely different circumstances involving 'phantom offset' accounts that reduced participant benefits and that were not disclosed until years after the fact." (Defs.' Resp. to Objs. at 3.)

Plaintiffs further contend the only communication Defendants timely sent to plan participants about the amendment was the Letter, which asserted, "effective January 1, 1999, you will be a participant in our new Retirement Program . . . the accruals under the . . . [Prior] Plan will stop as of January 1, 1999." (FAC ¶¶ 312-14.) Thus, because the Letter neither cautioned participants about a significantly reduced rate of future benefit accruals, nor included the text or a summary of the plan amendment, Defendants failed to comply with Section 204(h). (See Pls.' Objs. at 4.) But, as the FAC acknowledges, shortly after the Plan's effective date, Defendants "prepared a letter dated January 6, 1999, addressed to [] [participants], which provided further information regarding their new Retirement Program that became effective January 1, 1999, including enrollment information." (FAC ¶ 320.) Sometime in December 1999,

16

Defendants also distributed an SPD to plan participants which further explained the 1999 Conversion and its impact on participants' benefits. (See FAC ¶ 323.)

Defendants' Letter and subsequent disclosures to participants about the 1999 Conversion (such as the SPD) complied with Section 204(h). As in Pirro v. National Grid, Defendants here provided "numerous communications to Plaintiffs" that "individually and/or together contained a summary of the amendment written in a manner calculated to be understood by the average plan participants." No. 12-CV-1364, 2014 WL 1303414, at *6 (N.D.N.Y. Mar. 31, 2014), aff'd, 590 F. App'x 19 (2d Cir. 2014). To the extent Defendants failed to provide "sufficient" or timely advance notice of the 1999 Conversion, the SPD distributed to participants less than a year later "unequivocally repudiated" any misunderstanding or ambiguity stemming from the Plan's amendment. Pirro, 590 F. App'x at 21-22. Moreover, like in Register v. PNC Financial Services Group, Incorporated, the SPD here "summarized the changes to the plan, described the cash balance pension plan design, offered additional resources for more information, [and] defined important words or terms." 477 F.3d 56, 72 (3d Cir. 2007).

Upon de novo review, and accepting as true Plaintiffs' allegations the Letter and SPD were deficient and/or untimely, Plaintiffs still fail to state a claim pursuant to Section 204(h).

17

> The Treasury Regulations make it clear that all that is required in the [Section] 204(h) notice is the effective date and an understandable summary of the plan amendment, both of which Defendants provided . . . . Defendants did not notify participants that their benefit accrual rates would be 'significantly reduced' in the future, but, quite simply, they did not need to.

Register v. PNC Fin. Servs. Grp., Inc., No. 04-CV-6097, 2005 WL 3120268, at *8 (E.D. Pa. Nov. 21, 2005) (emphasis added), aff'd, 477 F.3d 56, 72 (3d Cir. 2007) (citation omitted); see also 26 C.F.R. § 1.411(d)-6, Q&A 10 (a plan amendment summary "need not explain how the individual benefit of each participant . . . will be affected by the amendment").

Thus, at the time, the statute did not require plan administrators to explicitly spell out for participants that their benefits would be "significant[ly]" reduced by a plan amendment. See 29 U.S.C. § 1054(h).[2]

---

[2] To the extent Plaintiffs make additional arguments in support of this objection, including but not limited to any arguments invoking Loper Bright Enters. v. Raimondo, 603 U.S. 369 (2024), the Court need not discuss all the points raised by the parties in their submissions. It is well-settled that "there is no requirement for a court to specifically address each and every argument raised by a party in papers filed with the Court." Hallmark Licensing, LLC v. Dickens, Inc., No. 17-CV-2149, 2020 WL 6157007, at *7 (E.D.N.Y. Oct. 21, 2020) (quoting Miller v. Metro. Life Ins. Co., No. 17-CV-7284, 2018 WL 5993477, at *5 n.5 (S.D.N.Y. Nov. 15, 2018) (further citations omitted)). "By extension, neither is a court required to address each and every case cited by a party in support of its position." Id.

18

Accordingly, upon de novo review, this Court ADOPTS Judge Shields's recommendation and OVERRULES this objection.

### 2. Objection 2: Defendants' Disclosures Regarding the 1999 Conversion Did Not Comply with Section 102 Requirements

As their second objection, Plaintiffs contend the Magistrate Judge erred in finding Defendants' disclosures about the 1999 Conversion complied with Section 102 because Defendants failed to disclose the Plan amendment's "wear-away effect in a manner calculated to be understood by the average plan participant." (See Pls.' Objs. at 6.) Upon de novo review, Plaintiffs' objection is unavailing.

An SPD of an employee benefit plan must be provided to plan participants, in writing, in a manner "calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants . . . of their rights and obligations under the plan." 29 U.S.C. § 1022(a) (1997). In relevant part, the SPD must contain information regarding "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." Id. § 1022(b).

The relevant portions of the appendix to the SPD distributed to plan participants in 1999 and referenced throughout the FAC state:

19

If you were a participant in the [Prior] Plan . . . you will begin your participation in the Cash Balance Plan as of January 1, 1999 with an Opening Account Balance . . . . [I]f . . . eligible, your account will [also] be credited with Transition Credits.

Your **"Opening Account Balance"** in the Cash Balance Plan is determined by converting your December 31, 1998 accrued benefit under the [Prior] Plan benefit formula to its present value on January 1, 1999. This conversion method assures that you receive a starting value in the Cash Balance Plan which is "actuarially equivalent" to the value of the benefit you had accrued under the [Prior] Plan's [] formula assuming that you retire at age 65.

Opening Account Balance [is] calculated as follows: Annual accrued benefit x present value conversion factor = Opening Account Balance

Transition Credits are designed to provide additional benefits to certain participants who might otherwise experience a shortfall in their normal retirement benefits as compared with those benefits they would have received under the . . . [Prior] Plan, had it continued. Transition Credits are calculated under a single set of assumptions regarding future interest and salary rate increases, which might be different from actual experience. Therefore, these credits do not provide a guarantee that benefits under the current Retirement Program will meet or exceed those which the . . . [Prior] Plan would have provided.

[T]he fact that a participant is not eligible for Transition Credits is also not a guarantee that the benefits provided under the current Retirement Program will meet or exceed those that the participant might have received under the . . . [Prior] Plan formula, had it continued.

> [Y]our minimum benefit under any form of payment under the Cash Balance Plan will be the value of your December 31, 1998 accrued benefit under the . . . [Prior] Plan including the value of any early retirement subsidies for which you may be eligible at the time you commence payment of your benefits.

(App'x to SPD, ECF No. 1-6, at pp. 1-3, 8 (emphasis in original)).

Plaintiffs contend the SPD, including the sections detailed above, failed to clearly explain to an average plan participant the 1999 Conversion would result in a significant reduction in benefits. In support of this argument, Plaintiffs allege "[t]he expression 'do not provide a guarantee,' . . . indicate[s] to the average Plan participant that the likelihood of there being a 'shortfall' would be small," and if there were a shortfall in benefits, "it would not be [] significant." (FAC ¶¶ 225, 229.) Plaintiffs further allege that by stating "Transition Credit[s] would 'protect the majority of participants from shortfalls,'" the SPD signaled "to the average Plan participant that if the 'assumptions' used to determine the Transition Credit were exactly met . . . then the majority of participants would have no 'shortfall.'" (FAC ¶ 234.) According to Plaintiff, the SPD also lead "the average Plan participant" to believe those who did not receive Transition Credits "most likely would not have a 'shortfall.'" (FAC ¶ 237.) Further, Plaintiffs contend the SPD was not written in a manner that would allow "an

21

average Plan participant to understand why their Opening Account Balances fell short of providing the full benefit to which they were already entitled." (FAC ¶ 326.) Thus, Plaintiffs maintain Defendants' disclosures regarding the 1999 Conversion, including the SPD, made it difficult for Plaintiffs and Class Members to uncover the alleged violations of their ERISA rights. (See FAC ¶ 331.)

Plaintiffs' Section 102 claims rely chiefly upon speculative, conclusory assumptions about what an "average plan participant" would understand the neutral language of the SPD to mean, instead of non-conclusory allegations explaining how Plaintiffs interpreted the SPD.[3] Thus, Plaintiffs' bald allegations are untethered to any supporting alleged facts which would nudge their Section 102 claims over the line from merely "possible" to "plausible." See Iqbal, 556 U.S. at 663 ("A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

To salvage their Section 102 claims, Plaintiffs liken the deficiencies of the SPD here to those found deficient in Osberg

---

[3] Although this Court does not suggest the FAC must include specific allegations about every named Plaintiff and potential Class Member and what they respectively understood the SPD to mean, Plaintiffs do not allege any named Plaintiff believed the SPD assured against a significant reduction in benefits.

22

v. Foot Locker, Incorporated.  See 862 F.3d 198 (2d Cir. 2017).

In Osberg, to support his claim defendants' SPD failed to alert plan participants of the potential for significant benefits reductions, the plaintiff pled the following:

> The SPD includes a sentence that states: "Your accrued benefit at the time your employment terminates is the greater of the amount determined under the Plan as amended on January 1, 1996 or your accrued benefit as of December 31, 1995." This is the SPD's only reference to the post-conversion benefit formula's greater-of rule.

> This single reference to the existence of a greater-of rule is made in passing, situated illogically . . . and without any context, precisely so the average participant would have no effective notice of even the possibility that he or she might experience a period of wear-away.

> While the SPD references the determination of the actuarially equivalent value of the accrued benefit . . . these references are misleading because the SPD makes no disclosure that . . . even after working and 'earning' benefits under the cash balance formula, the legally protected accrued benefit might very well exceed the benefit attributable to the participants' cash balance accounts.

> Defendants have used the SPD . . . to make participants think that since the conversion[,] they were and are accruing benefits on an "A+B" basis, i.e., since day one, January 1, 1996, they have been accruing new benefits under the cash balance formula and that those new cash balance accruals would be added to the present value of their frozen accrued benefit.

23

Osberg v. Foot Locker, Inc., No. 07-CV-1358, Am. Compl. (ECF No. 57) ¶¶ 94-95, 99, 102 (S.D.N.Y. 2012).

The appellate court in Osberg ultimately held the SPD "'falsely indicated to [p]articipants that their actual retirement benefits were fully reflected in the[] account balances' to which their pay and interest credits would apply . . . when in fact any participant whose account was in wear-away would instead receive the frozen value of the benefits they had accrued under the old plan for a period of time that could extend for years." 862 F.3d at 204.

Here, by contrast, Plaintiffs do not -- and cannot -- plausibly allege the SPD misled the "average plan participant" to believe they would receive their frozen accrued benefits under the Prior Plan plus any subsequent accruals under the new Cash Balance Plan formula. Unlike in Osberg, the instant SPD shows Defendants discussed the possibility of a "shortfall" in benefits at length, and expressly informed plan participants that, regardless of a participant's eligibility for Transition Credits, it was possible the benefits accrued following the 1999 Conversion would not "meet or exceed those that the participant might have received under the . . . [Prior] Plan formula, had it continued." (See App'x to SPD at p. 3.)[4]

---

[4] As explained in the R&R, Plaintiffs' reliance on Cigna Corp. v. Amara similarly fails to bolster their Section 102 claims. See 563

24

Plaintiffs' attempts to distinguish the "shortfall" referenced in the SPD from "wear-away" to show the SPD failed to inform participants of a potential benefits reduction is also inapposite.  The difference between "shortfall" and "wear-away" (if any) does not materially change how an average plan participant would read and understand the SPD.  Regardless of the specific terminology used, the SPD's plain text clearly informed the average plan participant the new Cash Balance formula could result in less retirement benefits than the Prior Plan's formula, had it continued.  (See id.)

Moreover, the SPD clearly conveys that what a participant accrued prior to the 1999 Conversion could be greater than what is ultimately accrued under the Cash Balance Plan. (See id. at p. 8.)  This was sufficient, pursuant to the laws applicable at the time, to inform participants of wear-away and the potential for a significant reduction in benefits.  As held in Pessin, if the participant always earned more under the Cash Balance Plan, there would be no need for a minimum benefit.  See Pessin v. JPMorgan Chase US Benefits Exec., No. 22-CV-2436, 2022 WL 17551993, at *5 (S.D.N.Y. Dec. 9, 2022), aff'd, 112 F.4th

_____

U.S. 421 (2011). Osberg and Amara are not analogous here, because in both cases, plan administrators were found to have violated ERISA because "they affirmatively mislead participants to believe they are better off under the cash balance plan and will receive both their cash balance accounts and their final average pay benefits." (See R&R at 13-14.)

25

129 (finding "minimum benefit" implies the calculation under a cash balance formula could be less than a participant's pre-conversion accrued benefits because if the new formula always provided greater benefits, there would be "no reason to promise" the pre-conversion benefits as a minimum benefit).

Plaintiffs argue Pessin is not analogous because its holding relied upon the fact the SPD provided participants a "minimum benefit" equal to the greater of the benefit under the new cash balance formula or the benefit accrued under "the continuation of the prior formula [] for an additional five years." (Pls.' Objs. at 11.)  The Court disagrees.  In Pessin, the court held the SPDs "adequately disclosed wear-away to plan participants and did not contain misleading information about the effect of wear-away" because the SPDs explained: (i) the plan was being transitioned to a cash balance formula; (ii) when participants' benefits would stop accruing under the prior plan formula; (iii) once participants' benefits stopped accruing under the prior formula, that accrued benefit would be "frozen and act as a minimum benefit"; and (iv) upon termination, participants "would receive the larger of the minimum benefit or the balance under the Cash Balance Plan, but not both."  112 F.4th at 140.  Thus, in Pessin, the Second Circuit affirmed the dismissal of plaintiff's Section 102 claim because defendants complied with the law's requirements;

26

the appellate court did not rely upon the five-year continuation of the prior formula in its reasoning.

The SPD here contains virtually the same information the Second Circuit held was sufficient in <u>Pessin</u> to put plan participants on notice of wear-away. Thus, upon <u>de novo</u> review, this Court ADOPTS Judge Shields's recommendation and OVERRULES this objection.

3. Objection 3: Plaintiffs' Successfully Pleaded Section 404 Claims Because Defendants Breached Their Fiduciary Duties by Not Disclosing the Potential for Wear-Away and the Ultimate Benefit Payable to Participants

As their third objection, Plaintiffs contend the Magistrate Judge erred in finding Defendants' disclosures sufficient pursuant to Section 404 "to put participants on notice" of possible wear-away resulting in them receiving the "minimum benefit rather than the cash balance benefit." (R&R at 16.)

Pursuant to ERISA Section 404, a fiduciary must discharge his plan-related duties "solely in the interest of the participants and beneficiaries" with the "care, skill, prudence, and diligence" of a prudent man acting in a like capacity. 29 U.S.C. § 1104(a)(1) (1996). ERISA's fiduciary duties of loyalty and prudence are the "highest duties known to law." <u>Rothstein v. Am. Int'l Grp., Inc.</u>, 837 F.3d 195, 208 (2d Cir. 2016) (citation modified). "When a plan administrator affirmatively misrepresents the terms of a plan or fails to provide information when it knows

27

that its failure to do so might cause harm, the plan administrator has breached its fiduciary duty to individual plan participants and beneficiaries." Devlin v. Empire Blue Cross & Blue Shield, 274 F.3d 76, 88 (2d Cir. 2001) (citation and quotation marks omitted). A plan administrator's failure to sufficiently explain the consequences of wear-away may constitute a breach of fiduciary duty. See Osberg v. Foot Locker, Inc., 138 F. Supp. 3d 517, 555 (S.D.N.Y. 2015) ("Osberg I"), aff'd, 862 F.3d 198 (2d Cir. 2017).

Plaintiffs contend that Defendants, like those in Osberg I, violated Section 404 by making "materially false and misleading statements and omissions designed to . . . conceal the Plan's wear-away effect" and prevent plan participants from discovering Defendants' concealment of wear-away and significantly reduced benefit accruals. (FAC ¶ 426; see also id. ¶¶ 422-30.) But, again, in Osberg I, the disclosures and messaging surrounding the changes to the retirement plan differed substantially from those articulated in the FAC. For example, in Osberg I, the company informed employees it was "'excited' to announce that, after 'listen[ing] to what associates have told us they would like to see,' it had decided to update its pension plan to 'give associates a more competitive retirement benefits package.'" Osberg I, 138 F. Supp. 3d at 529-30. The company also stated changes to its plan would "provide participants with more flexibility and a better ability to monitor their benefits," and allow participants to "see

28

their individual account balance grow each year, and know its value." Id. at 530.  This, in part, contributed to the court's finding that such communications violated statutory requirements and "did nothing to disabuse [p]articipants of the idea that their benefits were growing with their time of service." Id. at 555.

Conversely, in the instant case, the FAC does not allege Defendants disseminated any disclosures or communications that similarly misled plan participants to believe they were better off under the new Cash Balance Plan.  Plaintiffs argue the Letter's representations that the Plan amendment would assist participants "toward financial security in [their] retirement years," and "build a solid foundation for [their] retirement income" (FAC ¶¶ 311-18) led the average plan participant to believe the amendment was a "positive change and that they would be doing better than before, or at least the same as before, which is materially false."  (See Pls.' Objs. at 14.)

Plaintiffs also maintain the SPD was materially false and misleading because it informed participants they would receive "a starting value in the Cash Balance Plan which is 'actuarially equivalent' to the value of the benefit [participants] had accrued under the [P]rior . . . Plan" and failed to explain wear-away. (Id. (quotations in original).)  Plaintiffs also point to the SPD's language regarding potential shortfalls in benefits, alleging it signals to the average plan participant "it is very unlikely that

29

they will [] have a shortfall, but in the unlikely event it happened, it would not be significant." (Id. at 16.)

As explained above, Plaintiffs' conclusory characterizations of the SPD, unsupported by sufficient factual material rendering their claims plausible, cannot survive a motion to dismiss. (See supra "Discussion," Part II(B)(2).)

First, "actuarially equivalent" is not clearly defined by ERISA, and the average plan participant may not know or understand what "actuarially equivalent" means with respect to its impact on his retirement benefits. See Masten v. Metro. Life Ins. Co., 543 F. Supp. 3d 25, 34 (S.D.N.Y. 2021) (ERISA "nowhere defines actuarial equivalent[;] [n]or have courts agreed on a definition"). But even if the lump sum conversion methodology used in determining the "actuarial[] equivalent" of participants' accrued benefits under the Prior Plan that ultimately became the Opening Account Balance is opaque on the face of the SPD, that, alone, does not support the claim Defendants breached their fiduciary duties under Section 404. A detailed explanation of how and why Defendants determined each participant's Opening Account Balance was simply not required by the laws of the time. (See supra "Discussion," Part II(B)(1).) Again, plan administrators were required only to provide participants with a summary of the plan amendment and its effective date. See 29 U.S.C. § 1054(h)

30

(1997).  As explained above, Defendants did exactly that.  (See supra "Discussion," Part II(B)(1).)

Plaintiffs have also failed to provide sufficient facts plausibly alleging Defendants misled plan participants to believe they were better off under the Cash Balance Plan.  Unlike in Osberg I, Plaintiffs do not allege Defendants represented the amended plan as providing a "more competitive retirement benefits package", "more flexibility" or greater transparency about their benefits and their growth.  Cf. Osberg I, 138 F. Supp. 3d at 529-30.  Here, Defendants' assertions the amended plan will financially assist participants come time for their retirement are not comparable to the misleading promises of increased benefits made in Osberg I and which were found to have violated Section 404(a).  Again, conclusory, self-serving characterizations of the SPD's language are insufficient to state a claim; yet, that is what the FAC offers.

Moreover, even if the Court agreed Defendants' statements were deceptively positive, the SPD clearly and repeatedly informed participants they were not guaranteed to accrue benefits that exceeded, or even met, those they would have earned under the Prior Plan, had it continued.  (See supra "Discussion," Part II(B)(2).)  This belies any alleged intent by Defendants to mislead or deceive plan participants in violation of Section 404.

Plaintiffs further argue that, like in <u>Amara</u> and <u>Osberg</u>, participants here "had no information or formulas to make [benefits] comparisons, [and] thus were misled into believing this was a positive change, not one resulting in significant reduction of benefits." (<u>See</u> Pls.' Objs. at 16.) Even assuming Defendants' non-disclosure of such formulas and comparative information supports Plaintiffs' Section 404(a) claim, that claim still is questionable because the FAC analyzes these same allegedly undisclosed formulas <u>at length</u> to demonstrate the Cash Balance formula's impact on the benefits of hypothetical participant "Joan" and Plaintiff Scherer. (<u>See</u> FAC ¶¶ 175-219, 240-54, 289-309). Thus, contrary to Plaintiffs' contentions that Defendants provided insufficient and misleading information, the FAC shows Plaintiffs understood how Defendants calculated participants' Opening Account Balances and how application of the formula(s) led to wear-away. <u>See</u> <u>id.</u>

To the extent, for the first time, in their opposition to Defendants' motion to dismiss ("Opposition") Plaintiffs clarified they did not understand the formulas provided by the SPD at the time of disclosure, that representation is not sufficient to defeat the Motion. (<u>See</u> Opp'n, ECF No. 38-2, at 8.) In their Opposition, Plaintiffs claimed they required an expert actuary to perform extensive "trial-and-error" calculations to decipher the SPD's Opening Account Balance formula. (<u>See</u> <u>id.</u>) But, fatally,

32

these claims were not alleged in the FAC.  Nor can Plaintiffs now "amend [their] complaint by asserting new facts or theories for the first time in opposition to [a] motion to dismiss."  Stone Equities v. Town of Brookhaven, No. 25-CV-5237, 2026 WL 1493695, at *5 (E.D.N.Y. May 28, 2026) (internal quotation marks omitted) (quoting Churaman-Jadoo v. Daniels, No. 23-CV-8482, 2025 WL 2614943, at *4 (E.D.N.Y. Sept. 10, 2025)).  Accordingly, as pled, the FAC shows the SPD, when disclosed in 1999, did include enough information for participants to discover wear-away and the difference between what participants like "Joan" and Scherer would have earned under the Prior Plan and the Cash Balance Plan.

Therefore, upon de novo review, this Court ADOPTS Judge Shields's recommendation and OVERRULES this objection.

4. Objection 4: Plaintiffs Plausibly Stated a Claim Under Section 105 Because Defendants Failed to Provide Participants Benefits Statements that Included Participants' Total Benefits Accrued

As their fourth objection, Plaintiffs contend the Magistrate Judge erred in recommending Plaintiffs failed to state a claim pursuant to Section 105 "beyond conclusory statements that, the amount accrued under the cash balance formula was not the benefit Plaintiffs were entitled to receive, Plaintiffs received deficient statements, or how the statements were deficient." (Pls.' Objs. at 16.)

33

A pension benefits statement must inform plan participants of their "total benefits accrued," as determined by the latest available information. 29 U.S.C. § 1025(a)(2)(A)(i)(I). Plaintiffs argue they successfully stated a claim because the FAC asserts "the amount accrued under Defendants' new cash balance formula was not the benefit Plaintiffs were entitled to receive." (Pls.' Objs. at 1.) But as the R&R aptly explains, although Plaintiffs generally allege the quarterly benefits statements failed to provide the "total benefits accrued," the FAC does not expressly allege any Plaintiff was entitled to the frozen benefit accrued under the Prior Plan ("Protected Benefit") and did not receive it. (See R&R at 17.)

Plaintiffs' invocation of Pessin to show the allegations in the FAC are similarly sufficient to state a Section 105 claim only further highlights the FAC's deficiencies. In Pessin, plaintiff explicitly alleged the plan administrator failed to provide compliant pension benefits statements because they did not include plaintiff's "total benefits accrued, which, during the wear-away period, were [his] final average pay benefits" -- that is, the benefits plaintiff accrued under the prior plan's formula. Pessin, No. 22-CV-2436, Am. Compl. (ECF No. 30) ¶ 93 (S.D.N.Y. 2022). Here, Plaintiffs simply allege the benefit a "Class Member was entitled to receive was the greater of the value of the Protected Benefit or the Cash Balance Account." (FAC ¶ 402.) But

34

the FAC falls short of alleging: (1) any Plaintiff was <u>actually</u> entitled to the Protected Benefit; (2) the Protected Benefit was erroneously excluded from the "total benefits accrued" reflected on Plaintiffs' benefits statements; and (3) when Plaintiff(s) last received a deficient benefits statement. Moreover, as Defendants aptly argue:

> Each of the allegations cited by Plaintiffs' objections are conclusory allegations regarding account statements purportedly received by unnamed putative class members, rather than factual allegations regarding account statements received by the Plaintiffs and how those statements were purportedly deficient.

(Defs.' Opp'n to Objs. at 18.) The Court agrees. Simply stating "the quarterly account statements provided to Class members were required to contain their 'total benefits accrued' and yet they did not" (FAC ¶ 405) is conclusory, vague, and not supported by sufficient factual allegations to plausibly state a claim for relief pursuant to Section 105.

Accordingly, upon <u>de novo</u> review, this Court ADOPTS Judge Shields's recommendation and OVERRULES this objection.

### 5. <u>Objection 5: Plaintiffs Claims are Timely, and the Magistrate Judge Failed to Apply a Six-Year Statute of Limitations to All Claims</u>

As their fifth objection, Plaintiffs contend the Magistrate Judge erred in applying anything other than a "six-year after discovery statute of limitations period" to the claims

alleged in the FAC because Plaintiffs successfully advanced allegations of fraud or concealment, rendering their claims timely. (See Pls.' Objs. at 19.)

### a. Applicable Statute of Limitations

#### i. Claims Related to Breach of Fiduciary Duty

ERISA claims involving a breach of fiduciary duties must be brought within the earlier of (1) six years from the date of the last act or omission constituting the breach or (2) three years from the date the plaintiff gained actual knowledge of the breach or violation. 29 U.S.C. § 1113. However, an exception to this statute of limitations exists for cases involving fraud or concealment. Id. Such cases are timely commenced within six years of the plaintiff's "discovery of such breach or violation." Id.; see also Caputo v. Pfizer, Inc., 267 F.3d 181, 189 (2d Cir. 2001) ("[T]he 'fraud or concealment' provision does not 'toll' the otherwise applicable six-or-three-year statute of limitations . . . rather, it prescribes a separate statute of limitations of six years from the date of discovery.").

The fraud or concealment exception to 29 U.S.C. § 1113 applies if the fiduciary "(1) breached its duty by making a knowing misrepresentation or omission of a material fact to induce an employee/beneficiary to act to his detriment; or (2) engaged in acts to hinder the discovery of a breach of fiduciary duty." In

re Express Scripts/Anthem ERISA Litig., 285 F. Supp. 3d 655, 674-75 (S.D.N.Y. 2018) (quoting Janese v. Fay, 692 F.3d 221, 228 (2d Cir. 2012)).  Allegations of fraud must be plead with particularity, which requires a complaint to: "(1) specify the statements [] the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  Miller v. United States ex rel. Miller, 110 F.4th 533, 543-44 (2d Cir. 2024) (internal quotation marks and citation omitted).  A complaint must also describe events giving "rise to a strong inference that the defendant had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth."  Caputo, 267 F.3d at 191 (quoting Conn. Nat'l Bank v. Fluor Corp., 808 F.2d 957, 962 (2d Cir. 1987)).  To allege concealment, a plaintiff must plead facts giving rise to a duty to disclose the relevant information.  See DePasquale v. DePasquale, No. 12-CV-2564, 2013 WL 789209, at *12 (E.D.N.Y. Mar. 1, 2013), aff'd, 568 F. App'x 55 (2d Cir. 2014).

ii.  Claims  Unrelated  to  Breach  of
Fiduciary Duty

ERISA does not provide a statute of limitations for claims unrelated to breach of fiduciary duties.  See Osberg I, 656 F. Supp. 2d at 370.  As such, a court must adopt the most similar New York State statute of limitations for such claims.  See id.

                           b. Claims I through VII are Untimely,
                              Regardless of the Which Statute of
                              Limitations is Applied

Although the Court agrees with Judge Shields's assessment of which statutes of limitation apply to Plaintiffs' claims and why (see R&R at 18-24), the Court need not reevaluate those findings at length here because regardless of the applicable limitations period(s), all Plaintiffs' claims asserted in the FAC are time-barred.

Plaintiffs argue that if a complaint alleges "concealment" by Defendants, ERISA automatically provides a six-year statute of limitations for all causes of action, and that six-year period "only starts after the Plaintiffs discover the violation."  (Pls.' Objs. at 19.)  Plaintiffs thus contend a six-year after-discovery statute of limitations applies to all claims in the FAC because Defendants concealed the 1999 Conversion's impact on participants' benefits.  (See id.)

First, with respect to Claims I-III and V-VII, any ambiguity or confusion about the SPD, or any other communication regarding the 1999 Conversion, arose and was readily apparent at the time of disclosure to plan participants in 1998 and 1999. (See supra "Discussion," Parts II(B)(1)-(3).)  The FAC's conclusory allegations of fraud and concealment are contradicted by the plain language of the SPD which repeatedly advises participants of a possible significant reduction in benefits.

38

(See supra "Discussion," Part II(B)(2); see also App'x to SPD at pp. 1-3, 8.) Plaintiffs now emphasize certain allegedly unclear language in the SPD, including mention of "actuarial[] equivalen[ce]", "shortfall", "minimum benefit", and the formula(s) used to determine participants' Opening Account Balances. (See generally, Pls.' Objs.) But this language would have been equally unclear when it was first shared with participants in 1999 as in 2024, when this action commenced. And the FAC does not advance any factual allegations for the Court to determine otherwise; the FAC does not explain how or when any Plaintiff realized the SPD was unclear or misleading. Nor does the FAC explicitly place any plan or benefits-related disclosures distributed by Defendants after 1999 at issue.

As for Claim IV, the FAC fails to allege when Plaintiffs last received a deficient quarterly benefits statement. Without even an approximate date, the Court cannot determine if Plaintiffs' Section 105 claims fall within the applicable limitations period, whether it is one or six years long. In fact, the FAC does not include a single allegation addressing how or when any Plaintiff discovered any ERISA violation alleged in the FAC. Thus, the FAC's failure to articulate sufficient factual allegations about the timeliness of Plaintiffs' claims supports its dismissal.

Accordingly, upon <u>de novo</u> review, this Court ADOPTS Judge Shields's seventh recommendation and OVERRULES this objection.

### 6. Objection 6: Plaintiff Should be Granted Leave to Replead

Plaintiffs argue the Magistrate Judge erred by recommending against granting Plaintiffs leave to amend the FAC. Although the R&R did not make any recommendation as to Plaintiffs' request to replead, the Court now evaluates this request and denies it.

Leave to amend a complaint should be freely granted when justice so requires (see FED. R. CIV. P. 15(a)(2)), but "a plaintiff is precluded from amending his complaint when he was aware of deficiencies in his complaint[,] and had the opportunity to amend his complaint[,] but failed to cure the complaint's defects." <u>Alam v. Fairstead Mgmt. LLC</u>, No. 24-CV-0849, 2025 WL 622587, at *12 (S.D.N.Y. Feb. 26, 2025) (citing <u>Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n</u>, 898 F.3d 243, 257 (2d Cir. 2018)); <u>Twohig v. Shop-Rite Supermarkets, Inc.</u>, 519 F. Supp. 3d 154, 168 (S.D.N.Y. 2021) ("[A] plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend.").

A plaintiff is also not entitled to leave to amend if he fails to specify how amending would cure the complaint's

40

deficiencies. See TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 505 (2d Cir. 2014); cf. Food Holdings Ltd. v. Bank of Am. Corp., 423 F. App'x 73, 76 (2d Cir. 2011) (affirming denial of leave to amend complaint where plaintiffs made a boilerplate request "on the final page of their brief in opposition to defendants' motion to dismiss . . . without any explanation as to why leave to amend was warranted"). Moreover, in a motion for leave to amend a pleading, Local Civil Rule 15.1 requires counseled parties to attach as an exhibit "(1) a clean copy of the proposed amended . . . pleading; and (2) a [redlined] version of the proposed pleading that shows . . . all differences from the pleading that it is intended to amend or supplement." E.D.N.Y. Local Civ. R. 15.1(a).

Plaintiffs have known, or should have known, about the deficiencies in the FAC since well before the R&R was filed on February 18, 2026. Indeed, Plaintiffs have been on notice of the FAC's deficiencies since at least November 12, 2024, when Defendants filed their request for pre-motion conference ("PMC Request") seeking to dismiss the Amended Complaint. (See generally PMC Request, ECF No. 32.) The PMC Request argued the FAC, despite having already been amended, was still replete with conclusory allegations and unsupported by facts sufficient to state a claim on the merits or to render such claims timely. (See id.) The Magistrate Judge ultimately agreed with Defendants' position and

41

recommended dismissal of the FAC in its entirety. (See generally R&R). Still, Plaintiffs somehow claim they were not "truly aware of such pleading needs until this Court ruled [on the R&R], [and] thus could not attach an amended complaint" in compliance with Local Civil Rule 15.1(a). (Pls.' Objs. Reply at 2 n.2.)

Despite being afforded a second opportunity to bolster objections to the R&R via a reply to Defendants' response (see Pls.' Objs. Reply), Plaintiffs still failed to comply with Local Civil Rule 15.1(a). Instead, Plaintiffs summarily note that if the Court grants leave to amend, they would use the R&R to guide their amendment of the FAC. (See id. at 2 n.2.) But as Defendants correctly put forth:

> "[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies." In re Eaton Vance Mutual Funds Fee Litig., 403 F. Supp. 2d 310, 318 (S.D.N.Y. 2005) (internal citations omitted); see also Kyszenia v. Ricoh USA, Inc., 583 F. Supp. 3d 350, 371 (E.D.N.Y. 2022) (denying leave to amend where plaintiffs filed prior amended complaint "with the Court's permission, after the pre-motion conference on January 14, 2021, where the parties discussed issues in their pre-motion letters"); U.S. ex rel. Gallian v. AmerisourceBergen Corp., No. 16 02458, 2022 WL 20611664, at *7 (E.D.N.Y. Dec. 22, 2022) (similar).

(Defs.' Resp. to Objs. at 25.) The Court agrees.

In any event, it remains unclear how any subsequent attempt to amend the FAC would cure its deficiencies and render

42

Plaintiffs' claims timely.  See Landmark Ventures, Inc. 25 v. Wave Sys. Corp., 513 F. App'x 109, 112 (2d Cir. 2013) (affirming district court's denial of leave to amend when plaintiff's request "consisted of a single sentence in its memorandum in opposition to the defendants' motion to dismiss").

Accordingly, because Plaintiff has failed to properly present or support a request for leave to amend the FAC, the Court, in its discretion, DENIES leave to amend.  See, e.g., McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) ("it is within the sound discretion of the [Court] to grant or deny leave to amend").

CONCLUSION

Accordingly, for the stated reasons, **IT IS HEREBY ORDERED** that:

I.   Plaintiffs' objections (ECF No. 41) are **OVERRULED** in their entirety;

II.  The R&R (ECF No. 39) is **ADOPTED** in full, with Defendants' Motion to Dismiss the FAC (ECF No. 38) being **GRANTED** in its entirety; and

III. Plaintiffs' request for leave to amend the FAC, as raised in their objections, is DENIED.

**IT IS FURTHER ORDERED** the Clerk of the Court is to enter judgment in favor of Defendants and, thereafter, mark this case **CLOSED.**

SO ORDERED.

/s/ JOANNA SEYBERT
Hon. Joanna Seybert, U.S.D.J.

Dated: July 10, 2026
       Central Islip, New York